*Asberry Daniels #242304 v. Leslie, et al*
**USDC-ED No: 2:17-cv-10269**
**Honorable Paul D. Borman**
**Magistrate Anthony P. Patti**

# EXHIBIT D

Affidavit of Steven Kindinger

## AFFIDAVIT OF STEVEN KINDINGER

I, Steven Kindinger, having been duly sworn, depose and say:

1.     If sworn as a witness, I can testify competently and with personal knowledge to the facts contained within this affidavit.

2.     I am presently employed by the Michigan Department of Corrections (MDOC), as the Warden's Administrative Assistant at Gus Harrison Correctional Facility (ARF) in Adrian, Michigan.

3.     I have personally reviewed the Complaint filed by Plaintiff Asberry Daniels # 242304, in the above action and I am familiar with its content.

4.     Plaintiff references MDOC Policy Directive 03.03.130 in Paragraphs 28 and 29 of the Complaint.   Attached as Attachment #1 is a true and correct copy PD 03.03.130 as currently contained in MDOC records.  This Policy Directive has been in effect at all times relevant to this lawsuit.  It sets forth the MDOC's policy for Humane Treatment and Living Conditions for Prisoners.

5.     Attachment #2 is a true and correct copy of PD 04.05.110 as currently contained in MDOC records.  This Policy Directive has been in effect at all times relevant to this lawsuit and sets for MDOC policy for Use of Force.

6.     Attachment #3 is a true and correct copy of PD 04.05.112 as currently contained in MDOC records.  This Policy Directive has been in effect at all times relevant to this lawsuit and sets forth MDOC policy for Managing Disruptive Prisoners.

1

7. Attachment #4 is a true and correct copy of PD 03.04.125 as currently contained in MDOC records. This Policy Directive has been in effect at all times relevant to this lawsuit and sets forth the MDOC's policy for response to Medical Emergencies.

8. I am personally familiar with all documents referenced in this affidavit and they are records of regularly conducted activity of the Michigan Department of Corrections. Any records were made at or near the time of the occurrences reflected, by a person with knowledge of those matters, or from information transmitted by a person with knowledge of those matters. Any documents are kept in the regular course of business of the Michigan Department of Corrections. Any copy of these records attached to or accompanying this affidavit are true and accurate copies of the original records.


AFFIANT SAYS NOTHING FURTHER.

Steven Kindinger
Gus Harrison Correctional Facility


Subscribed and sworn to before me, a Notary Public,

on the ___17___ day of ___April___, 2017.

___Angela Long___
Notary Public

___Lenawee___ County, Michigan

My Commission Expires: ___8-17-22___

ANGELA LONG
NOTARY PUBLIC, STATE OF MI
COUNTY OF LENAWEE
MY COMMISSION EXPIRES Aug 17, 2022
ACTING IN COUNTY OF _Lenawee_

2

| MICHIGAN DEPARTMENT OF CORRECTIONS<br>**POLICY DIRECTIVE** | EFFECTIVE DATE<br>02/23/2009 | NUMBER<br>03.03.130 |
|---|---|---|
| SUBJECT<br>HUMANE TREATMENT AND LIVING CONDITIONS FOR PRISONERS | SUPERSEDES<br>03.03.130 (03/27/06) | |

| AUTHORITY |
|---|
| MCL 791.203 |

| ACA STANDARDS |
|---|
| 4-ACRS-1A-07,2A-03,2A-04,2A-05,3A-07,<br>4A-03,5A-07,6A-03,6A-04,6A-04-2,<br>6A-05,4B-01, 6B-01,6B-02,4C-06; 4-4133,<br>4-4137-4-4139,4-4141,4-4153, 4-4180,<br>4-4182,4-4227,4-4231,4-4281,4-4283, 4-4306,<br>4-4326-4-4328, 4-4341-4-4343, 4-4428,<br>4-4429,4-4433,4-4435 |

| PAGE | 1 | OF | 3 |
|---|---|---|---|

**POLICY STATEMENT:**

All prisoners committed to the jurisdiction of the Department shall be treated humanely and with dignity in matters of health care, personal safety and general living conditions. They also shall not be discriminated against based on race, religion, ethnic background, sex, sexual orientation, gender identity, national origin, or disability. Youths adjudicated as delinquent offenders or charged with offenses that would not be crimes if committed by adults are not under the jurisdiction of the Department and therefore are not housed in Department facilities.

**RELATED POLICY:**

03.03.140     Prohibited Sexual Conduct Involving Prisoners

**POLICY:**

**GENERAL INFORMATION**

A.     Each prisoner shall be assigned to a housing unit upon arrival at a correctional facility. Housing unit staff shall be available to provide advice and assistance to prisoners in their respective housing units. They also shall ensure prisoners are referred to other staff as necessary to provide any required counseling services, in accordance with Department policy.

**LIVING CONDITIONS**

B.     Living conditions in Correctional Facilities Administration (CFA) facilities shall be consistent with American Correctional Association (ACA) Standards for Adult Correctional Facilities insofar as feasible. Prisoners in CFA facilities shall be provided with the following:

1.     Clean and orderly surroundings.

2.     A sufficient number of toilets, washbasins, and showers to meet the needs of the prisoner population and is consistent with Department of Consumer and Industry Services regulations. Urinals may be substituted for up to half the toilets in male facilities.

3.     Laundry and other facilities for personal hygiene.

4.     Lighting, ventilation, heating, and noise levels which are adequate for comfort.

5.     Non-housing areas maintained in a healthy and safe manner.

C.     Prisoners shall be encouraged to maintain a "well groomed" appearance. Prisoners shall be provided or permitted to purchase personal hygiene items, including soap, toothbrushes, toothpaste/toothbrushes/shaving necessities, shampoo, toilet paper, suitable comb/pick/hairbrush,

Attach. #1

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 02/23/2009 | 03.03.130 | PAGE 2 OF 3 |

deodorant, and, for female prisoners, sanitary napkins. Showers shall be offered in general population as often as possible. Showers shall be offered in segregation in accordance with PD 04.05.120 "Segregation Standards".

D.  Prisoners shall be permitted to maintain head and facial hair in accordance with their personal beliefs provided that reasonable hygiene is maintained. Hair care services shall be offered at each CFA institution in accordance with applicable sanitation and health requirements.

E.  All prisoners shall be provided wholesome and nutritionally adequate meals as set forth in PD 04.07.100 "Offender Meals". Meals shall be prepared and served in accordance with MCL 333.12901 et seq. of the Michigan Public Health Code. CFA prisoners shall be permitted to eat in group dining facilities, unless they are restricted for security, medical, or behavior reasons. During meal periods, prisoners shall be permitted to talk using normal conversational tones.

F.  All CFA general population prisoners shall be afforded the opportunity for at least one hour per day indoor or outdoor recreation (i.e., yard), unless restricted for medical or security reasons, including due to potentially dangerous weather conditions (e.g., lightning; low wind chill factor). Segregation prisoners shall be permitted out-of-cell movement as set forth in PD 04.05.120 "Segregation Standards".

HEALTH CARE

G.  Health care, including psychological services, shall be available to prisoners consistent with contemporary standards of medical practice in the community, as set forth in PD 03.04.100 "Health Services". Health care shall be available, accessible and organized for delivery in a humane, cost-effective and efficient manner.

H.  All seriously ill or injured prisoners shall receive prompt medical attention as set forth in PD 03.04.125 "Medical Emergencies". Appropriate staff shall be informed of any special needs of prisoners due to physical or mental problems.

PROTECTION FROM MENTAL OR PHYSICAL ABUSE

I.  To prevent abuse of prisoners, the following safeguards shall apply:

1.  Facility staff shall identify prisoners who are assaultive or predatory. Such prisoners shall be placed at the level of security necessary to control such behavior.

2.  The cell or room assignment of prisoners shall be regulated to prevent manipulation by other prisoners. Cell or room changes should be made only on the basis of program need or facility security, or for good order of the housing unit, as determined by housing staff. A prisoner shall be placed in a single occupancy cell when necessary to ensure the safety of the prisoner or others.

3.  Prisoners shall be provided reasonable safety from assaults. This shall include adequate staff supervision, as set forth in institutional staffing charts, and the strict control of tools and weapons.

4.  No prisoner or group of prisoners shall be given control or authority over other prisoners.

5.  Activity against a prisoner which may constitute a felony shall be reported to appropriate law enforcement authorities. In addition, prisoners shall be subject to the Department disciplinary process in accordance with PD 03.03.105 "Prisoner Discipline".

6.  Staff shall not use or engage in, and shall discourage through appropriate means any person's use of, derogatory, demeaning, humiliating, or degrading actions or language toward others. It is a violation of Department work rules for staff to engage in sexual harassment or sexual misconduct with a prisoner, as defined in the Employee Handbook. Staff also are prohibited from retaliating against a prisoner who refuses to participate in prohibited staff conduct or who files a complaint or cooperates in an investigation of prohibited staff conduct. Staff engaging in

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>02/23/2009 | NUMBER<br>03.03.130 | PAGE 3 OF 3 |
|---|---|---|---|

sexual harassment, sexual misconduct, or other prohibited conduct shall be subject to discipline in accordance with PD 02.03.100 "Employee Discipline" and in accordance with PD 03.03.140 "Prohibited Sexual Conduct Involving Prisoners", as appropriate.

J.   Prisoners shall not be subjected to personal abuse from staff. Staff shall act objectively and with restraint when in conflict with a prisoner or under threat of personal danger. Facility authorities shall be alert to identify staff members unable to properly respond to these pressures to ensure corrective action. Allegations of use of force in violation of PD 04.05.110 "Use of Force" shall be investigated and appropriate action taken in accordance with PD 02.03.100 "Employee Discipline".

K.   Staff have a responsibility to protect the lives of both employees and prisoners, provide for the security of the State's property, prevent escape, and maintain good order and discipline. Thus, they are sometimes required to act under circumstances where the use of physical restraint or force is required. The following are prohibited:

    1.   Corporal punishment.

    2.   Deprivation of clothing, light, ventilation, heat, balanced diet, or hygienic necessities or subjection to excessive noise, except as set forth in PD 04.05.120 "Segregation Standards" and PD 04.06.115 "Suicide Prevention".

    3.   Any act or lack of care, whether by willful act or neglect, that injures or significantly impairs the health of any prisoner.

    4.   Willful infliction of mental distress, degradation, or humiliation.

    5.   Willful damage to prisoner property.

L.   Discrimination based on personal prejudices as to race, religion, color, national origin, age, sex, sexual orientation, gender identity, height, weight, marital status, or disability is prohibited. This includes sexual harassment. This also includes discrimination in the form of paternalism or expecting less than full responsibility from members of minority, ethnic or racial groups or from either sex.

M.   Prohibited forms of discrimination shall not serve as the basis for prisoner programming, including work and school assignments, or other administrative decisions.

N.   The Administrator of the Office of New Employee Training and Professional Development, Operations Support Administration, shall ensure training is available to all staff in the areas of race relations, the understanding of cultural differences, and sexual equality.

## PROCEDURES

O.   Operating procedures are not required for this policy directive.

## AUDIT ELEMENTS

P.   A Primary Audit Elements List has been developed and is available on the Department's Document Access System to assist with self audit of this policy pursuant to PD 01.05.100 "Self Audit of Policies and Procedures".

APPROVED: PLC   02/05/09

NOTICE

| MICHIGAN DEPARTMENT OF CORRECTIONS **POLICY DIRECTIVE** (EXEMPT) | EFFECTIVE DATE 11/01/2014 | NUMBER 04.05.110 |
|---|---|---|
| SUBJECT USE OF FORCE (EXEMPT) | SUPERSEDES 04.05.110 (09/06/13) | |
| | AUTHORITY MCL 791.203, 800.41 | |
| | PAGE 1 OF 5 | |

**POLICY STATEMENT:**

Employees are authorized to use force in the performance of their duties as set forth in this policy.

**RELATED POLICIES:**

| | |
|---|---|
| 01.05.120 | Critical Incident Reporting |
| 03.03.100 | Firearms, Electronic Control Devices, Specialty Impact Devices and Chemical Agents |
| 04.05.112 | Managing Disruptive Prisoners |

**POLICY:**

GENERAL INFORMATION

A.    Employees have a duty to protect themselves, other staff, the public and offenders who are threatened by the unlawful actions of others. Employees also are required to prevent escapes, maintain order and control within the facility and to protect State property.  Employees shall use all necessary and suitable means to perform these duties and responsibilities, including the use of physical force where appropriate and within the requirements of this policy.  Force shall not be used for vindictive or retaliatory purposes. The use of excessive or unreasonable force may lead to disciplinary action against the employee, civil suit, and criminal prosecution.

B.    All employees have a responsibility to come to the aid of another employee or an offender who is in danger.  The best way for staff not trained in prisoner control techniques to assist include the following:

1.    An immediate call for assistance through use of a body alarm, radio, telephone, or any other available means;

2.    Verbal commands to the individual(s) to cease and disperse;

3.    Identification of person(s) involved.

C.    Notwithstanding Paragraph B, if there is an immediate risk of death or serious injury, all employees shall provide physical assistance to the extent possible.

AMOUNT OF FORCE

D.    Employees are authorized to use as much force as is reasonably necessary to perform their duties and to protect themselves and others from harm. However, the amount of force which is reasonable depends upon the totality of circumstances of the particular incident.  The controlling factors are:

1.    The degree of force threatened or used by the individual, including whether s/he possesses a weapon, such as a knife or any object which could be used to cause physical injury;

2.    The employee's reasonable perception of the danger of death or serious physical injury;

3.    The alternatives available to control the situation or defuse the conflict without the use of force.

E.    The appropriateness of the type and amount of force used by the employee (e.g., the kind of weapon

Attach. #2

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE (EXEMPT) | 11/01/2014 | 04.05.110 | PAGE 2 OF 5 |

used, the area of the body struck) will be examined using the preceding factors.  Only force which is reasonable in responding to the situation is permissible.

## ALTERNATIVES TO USE OF FORCE

F.      Employees must always remain alert to the development of dangerous situations and violent confrontations.  To avoid such situations, employees must be aware of their surroundings at all times, including, whenever possible, the history of offenders with whom they are in contact, the presence or absence of other staff in the immediate area, the avenues of escape in any setting, and the available means of summoning assistance.  Personal safety, and the safety of other staff, offenders, visitors, and members of the public, must be a primary concern of employees at all times.

G.      If potentially violent confrontations develop, employees must be aware of and use any available alternatives to the use of force which do not conflict with their duties and responsibilities.  Such alternatives include:

1.      The use of verbal and non-verbal de-escalation techniques to defuse a potentially violent situation;

2.      Waiting for the offender to "cool down" if this can be safely done; e.g., a prisoner who is disruptive but is confined and is not physically harming himself/herself, or threatening to do so, and is not physically harming another person or causing undue disruption to others;

3.      Calling additional staff to present a show of force;

4.      The use of evasive tactics, followed by retreat and the summoning of assistance.

## DEADLY FORCE

H.      Deadly force is that degree of force which is likely to result in death or serious physical injury.  Such force may be used only as a last resort, when there are no safe and reasonable alternatives to accomplish the objective.  Deadly force is to be avoided whenever possible and, when it cannot be avoided the force used should be appropriate for the situation.  Knives and firearms are always considered to be instruments of deadly force; however, a blow or hold to the head, neck, throat, or other vulnerable area of the body also may be deadly force.

I.      If gunfire is used, it shall be directed with the intent to stop the person or persons at whom the gunfire is directed.  A verbal warning should precede gunfire directed at a person, if time and circumstances permit such warnings.

J.      Deadly force may be used only in the following situations:

1.      To prevent death or serious physical injury to self, other staff, offenders, or other persons who are threatened;

2.      To prevent the taking of hostages;

3.      To prevent the escape of any prisoner from a correctional facility, including while being transported to or from a correctional facility;

4.      To prevent major damage to State property during a disturbance within a facility if it is reasonably believed that the damage may cause death or serious physical injury to any person. For example, if prisoners are attempting to burn a building and there is any possibility that the building is occupied or that the fire may spread to an occupied building, deadly force may be used.  In these situations, use of deadly force must be authorized by a shift commander or higher authority;

5.      To prevent prisoners from unlocking other prisoners without authorization if it is reasonably believed that the unlocking may result in death or serious physical injury to others.  Such a belief

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE (EXEMPT) | 11/01/2014 | 04.05.110 | PAGE 3 OF 5 |

may be based upon the words and actions of the prisoners, the security level of the institution, and any other factors deemed relevant by corrections staff. In this instance, the use of deadly force must be authorized by a shift commander or higher authority.

WARNING SHOTS

K.  Warning shots shall only be used in a situation which occurs inside the security perimeter of an institution or to prevent an escape or storming of the security perimeter from the outside, if the institution is located in an area where a warning shot can be fired safely. All institutions with gun towers or turrets shall have warning shot target zones installed and maintained consistent with requirements set forth in the Department's Ordnance Manual. Wardens shall ensure target zones are identified for all other areas within their respective institutions at which armed staff may be strategically placed during a disturbance (e.g., on a roof).

L.  A warning shot must be directed in a manner which avoids risk to those not involved in the incident and presents the least possible risk to the prisoner(s) being warned. For example, a warning shot may be aimed into the ground or in another direction where there is clearly no one present. However, at times it may be appropriate to aim warning shots into the ground directly in front of a person or persons who are advancing on a target, if this is the only effective means of stopping them short of shooting to stop.

M.  As set forth in PD 03.03.100 "Firearms, Electronic Control Devices, Specialty Impact Devices and Chemical Agents", a Firearms Use Evaluation form (CAJ-238) shall be completed whenever a firearm is discharged, including when going to or returning from work, except as required during training, qualification, or range practice. Any use, including discharge, of a firearm shall be reported as set forth in PD 01.05.120 "Critical Incident Reporting". Absconder Recovery Unit staff shall also report the use of a firearm as required by PD 06.01.130 "Absconder Recovery Unit". All Firearms Use Evaluation forms shall be forwarded with any written report required by PD 01.05.120 and PD 06.01.130 as set forth in those policies, and a copy sent to the Administrator of the Office of New Employee Training Section.

N.  Whenever a Firearms Use Evaluation form is completed, as a result of a warning shot or discharge of firearm not resulting in injury or death, a review will be conducted by the Warden/designee or FOA Administrator as appropriate. For Regional CFA staff, Central Office staff, Corrections Transportation Officers, and ARU staff a review will be conducted by the CFA Operations Administrator. The Warden/designee, FOA Administrator, or CFA Operations Administrator shall review the form and any other relevant information to determine whether discharge of the firearm was appropriate. The Warden/designee, FOA Administrator, or CFA Operations Administrator shall prepare a written report for the appropriate Deputy Director setting forth their findings regarding the incident.

O.  An employee who discharges a firearm not resulting in injury or death may be placed on an assignment which requires the use of firearms only after the Warden/designee or FOA Administrator has reviewed the Firearms Use Evaluation form and any other relevant information and has determined the discharge of the firearm was appropriate.

P.  Any discharge of a firearm resulting in injury or death shall require a Shoot Review Team, appointed by the Director and chaired by the appropriate Deputy Director, to review the incident. The Shoot Review Team shall review the Firearms Use Evaluation form, the critical incident report, and any other relevant information to determine whether discharge of the firearm was appropriate. The Shoot Review Team shall prepare a written report for the Director setting forth its findings regarding the incident.

Q.  An employee who discharges a firearm causing injury or death shall not be placed on an assignment which requires the use of firearms until the Director has reviewed the report of the Shoot Review Team and determined that the use of firearms was appropriate. The employee shall be immediately referred to the Employee Services Program or other appropriate counseling services.

R.  Only those employees authorized by PD 03.03.100 "Firearms, Electronic Control Devices, Specialty Impact Devices and Chemical Agents" may carry and use firearms in the performance of their duties.

NON-DEADLY FORCE

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE (EXEMPT) | 11/01/2014 | 04.05.110 | PAGE 4 OF 5 |

S.      Non-deadly force is that degree of force which is <u>not</u> likely to cause death or serious physical injury; e.g., use of chemical agent, specialty impact device, or electronic control device; certain self-defense and prisoner control techniques or strikes to areas of the body unlikely to result in serious physical injury. Only those employees who have completed Department training in prisoner control techniques are authorized to use such techniques.

T.      Reasonable non-deadly force may be used in the following situations:

     1.      Self-defense;

     2.      Defense of others;

     3.      Prevention of a suicide;

     4.      Maintaining order and control in a facility, including prevention of damage to State property;

     5.      Prevention of escape from any security level;

     6.      Prevention of the commission of a felony by an offender;

     7.      To effect a lawful arrest.

## RECORDING AND REPORTING USE OF FORCE

U.      If there is an opportunity to plan strategy beforehand in dealing with disruptive or violent prisoners, an audio-visual recording of the incident shall be made, including staff efforts to defuse the situation without the use of force. In CFA and the Reentry Facilities, the Warden or Deputy Warden shall view the audio-visual recording within one business day after the recording was made to ensure all policy requirements were followed. The recordings shall be retained in accordance with the Department's Record Retention and Disposal Schedule or, if not addressed in the schedule, for a minimum of three years. However, when it is known that a lawsuit has been filed or an investigation is currently underway regarding a specific incident, the recording shall be retained until completion of the investigation or litigation, including appeal. Questions regarding pending litigation shall be directed to the Litigation Section of the Office of Legal Affairs, Budget and Operations Administration.

V.      Any employee who uses or observes the use of force by another employee shall report the incident to his/her supervisor immediately and as required in PD 01.05.120 "Critical Incident Reporting"; the use of an electronic control device by the Absconder Recovery Unit shall be reported as set forth in PD 06.01.130 "Absconder Recovery Unit". The report shall include a description of the amount and kind of force used, the exact holds used, if blows were delivered, methods of restraint, areas of the body struck, and whether a weapon was used; if a weapon was used, the kind of weapon(s) used also shall be included. The report also must cover the presence of others, including offenders, employees, and others, and describe their participation in the incident. The report also shall include verbal orders given before or during the incident, any conversation, and whether profanity or racial epithets were used by employees, offender, or others.

W.      Failure of any employee to report accurately and completely any incident where force was used may result in disciplinary action.

## PROCEDURES

X.      Wardens and the FOA Deputy Director shall ensure that procedures are developed as necessary to implement requirements set forth in this policy directive; this shall be completed within 60 calendar days after the effective date of the policy directive.

## AUDIT ELEMENTS

Y.      A Primary Audit Elements List has been developed and is available on the Department's Document Access System to assist with self-audit of this policy pursuant to PD 01.05.100 "Self-Audit of Policies

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE (EXEMPT) | 11/01/2014 | 04.05.110 | PAGE 5 OF 5 |

and Procedures".

APPROVED: DHH   09/22/14

CFA Memo – "Alternative Restraints - Stun-Cuff" - 12/16/15

| MICHIGAN DEPARTMENT OF CORRECTIONS **POLICY DIRECTIVE** (EXEMPT) | EFFECTIVE DATE 12/01/2014 | NUMBER 04.05.112 |
|---|---|---|
| SUBJECT MANAGING DISRUPTIVE PRISONERS (EXEMPT) | SUPERSEDES 04.05.112 (2/19/14) | |
| | AUTHORITY MCL 791.203 | |
| | PAGE 1 OF 9 | |

**EXEMPT**

**POLICY STATEMENT:**

Force may be used to control a disruptive prisoner as set forth in this policy.

**RELATED POLICIES:**

| | |
|---|---|
| 01.05.120 | Critical Incident Reporting |
| 03.03.100 | Firearms, Electronic Control Devices, Specialty Impact Devices and Chemical Agents (EXEMPT) |
| 04.05.100 | Disturbance Control (EXEMPT) |
| 04.05.110 | Use of Force (EXEMPT) |
| 04.06.115 | Suicidal and Self-Injurious Behavior |

NOTE: This policy does not apply to the Detroit Detention Center.

NOTE: Use of in-cell custodial restraints is prohibited at Charles E. Egeler Reception and Guidance Center (RGC), Duane L. Waters Health Center (DWH) and C Unit pursuant to *Hadix*. The Emergency Restraint Chair is only authorized to be used at RGC for transportation of a disruptive prisoner to a secure location. The Emergency Restraint Chair is not authorized to be used at DWH and in C Unit.

**POLICY:**

DEFINITION

A.   Mental Disability – Any of the following mental conditions:

1.   Mental illness is characterized by a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or the ability to cope with the ordinary demands of life.

2.   Severe chronic brain disorder is characterized by multiple cognitive defects (e.g. memory impairment resulting from a medical condition or brain injury due to trauma or toxins).

B.   Qualified Health Professional (QHP) - A health care professional licensed by the State of Michigan or registered/certified to practice within the scope of his/her training.

C.   Qualified Mental Health Professional (QMHP) - A physician, psychiatrist, nurse practitioner, physician's assistant, psychologist, social worker, or registered nurse who meets the requirements set forth in MCL 330.1100b and is trained and experienced in the areas of mental illness or mental disabilities.

GENERAL INFORMATION

D.   For purposes of this policy, "prisoner" includes probationers and parolees housed in correctional facilities.

E.   This policy does not apply to the use of mechanical restraints during the routine movement of prisoners. The routine use of mechanical restraints during transportation and off-site movement shall be in accordance with PD 04.04.135 "Custodial Transportation of Offenders." The use of mechanical restraints during other routine movement of prisoners shall be in accordance with facility procedures.

Attach. #3

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | PAGE |
|---|---|---|---|
| POLICY DIRECTIVE (EXEMPT) | 12/01/2014 | 04.05.112 | 2 OF 9 |

F.  Only the amount of force necessary to control a disruptive prisoner shall be used, in accordance with PD 04.05.110 "Use of Force." Whenever force is used, it shall be reported as required by PD 01.05.120 "Critical Incident Reporting" and PD 04.05.110 "Use of Force." Medical examination and necessary treatment shall be given to all persons who are injured as a result of the use of force, and to prisoners directly exposed to a chemical agent or an Electronic Control Device (ECD), as soon as the situation is under control. If a prisoner is injured as a result of exposure to a chemical agent used during transportation, medical attention shall be given to the prisoner upon arrival at the scheduled destination unless the prisoner's physical condition or medical complaints suggests immediate medical attention is warranted beyond the scope of care available at the facility. If immediate medical attention is warranted, the prisoner shall be taken to the nearest medical facility if closer than the scheduled destination.

G.  Employees shall conduct themselves professionally when managing a disruptive prisoner. The decision to apply mechanical restraints, or use a chemical agent, a specialty impact device, or an ECD, shall not be capricious, retaliatory, or punitive. The appearance of personal reprisal shall be avoided when attempting to control a prisoner by use of force. Whenever possible, an employee who has recently been physically assaulted by a prisoner shall not be permitted to be present if it becomes necessary to restrain or subdue that same prisoner. The employee also shall not be involved in deciding when applied restraints are to be removed from the prisoner.

H.  Staff shall not use a chemical agent, specialty impact device, or electronic control device on any prisoner who is on 4-point restraints, in a safety net, or in an Emergency Restraint Chair (ERC) which is mobility restricted in a facility and is not being used as a transportation chair. An employee who uses/misuses a mechanical restraint, transport device, chemical agent, a specialty impact device, an ECD, or any control technique to manage a disruptive prisoner in violation of this policy, or fails to report such use/misuse, shall be suspended immediately pending investigation.

I.  A disruptive prisoner may be required to submit to a strip search when necessary in accordance with PD 04.04.110 "Search and Arrest in Correctional Facilities."

J.  Whenever it is believed that a prisoner's disruptive behavior may be related to a mental disability or other medical condition, the prisoner shall be immediately referred for evaluation as set forth in PD 04.06.180 "Mental Health Services" or PD 03.04.100 "Health Services," as applicable. A prisoner who exhibits suicidal or other self-injurious behavior shall be managed as set forth in PD 04.06.115 "Suicidal and Self-Injurious Behavior."

K.  Medication shall only be ordered for documented reasons of medical or psychiatric treatment.

L.  A disruptive prisoner housed in an inpatient medical unit in a correctional facility shall be managed in accordance with procedures issued by the Warden and approved by the Department's Chief Medical Officer (CMO). If the prisoner is housed in an inpatient mental health unit, the prisoner shall be managed in accordance with procedures issued by the Warden and approved by the Administrator of Mental Health Services and the Chief Psychiatric Officer. This includes the use of therapeutic restraints and seclusion if ordered by a psychiatrist. The use of custodial restraints, however, must comply with this policy. Facility procedures shall, at a minimum, address the following:

   1.  The conditions under which therapeutic restraints and seclusion may be used.

   2.  The types of therapeutic restraints which may be applied.

   3.  Any restrictions on the use of therapeutic restraints or seclusion.

   4.  Monitoring provisions for restrained prisoners and for prisoners placed in seclusion.

ORDNANCE MANUAL

M.  The Manager of the Ordnance Unit in the Training Division, Budget and Operations Administration, shall ensure that the Department's Ordnance Manual includes the following:

   1.  All mechanical restraints and mouth shields authorized for use on disruptive prisoners, the institutions at which each is approved for use, and any restrictions on use. This includes other devices used to provide for the safety of a self-injurious prisoner and any restrictions on the use of specific restraints on pregnant

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE (EXEMPT) | 12/01/2014 | 04.05.112 | PAGE 3 OF 9 |

prisoners.

2. All transport devices authorized to physically move a disruptive prisoner, the institutions at which each is approved for use, and any restrictions on use. This shall include any restrictions for use on pregnant prisoners.

N. Only those restraints and devices identified in the Department's Ordnance Manual may be purchased or used. Restraints and devices identified in the Ordnance Manual may be used only as authorized by this policy and only in the manner intended, without alteration in any form. These requirements do not apply if presented with an emergency condition for which authorized restraints and devices will not be effective. The use of non-authorized restraints and devices shall be used only with written notice to the CFA Deputy Director. If use is approved, the Ordnance Manual shall be revised accordingly.

## TRAINING REQUIREMENTS

O. In conjunction with the Training Division, the CFA Deputy Director shall ensure training is available to staff in de-escalation techniques, forced cell/room entries and extractions, and the appropriate use of mechanical restraints, mouth shields, and transport devices. Staff shall perform a forced cell/room move or extraction, or use mouth shields, transport device, or mechanical restraints, including an ERC, only after satisfactory completion of all required training. This includes training specific to the restraint or other device to be used.

## ALTERNATIVES TO USE OF FORCE

P. Employees must always remain alert to the development of dangerous situations and violent confrontations. To avoid such situations, employees must be aware of their surroundings at all times, including, whenever possible, the history of offenders with whom they are in contact, the presence or absence of other staff in the immediate area, the avenues of escape in any setting, and the available means of summoning assistance. Personal safety and the safety of other staff, offenders, visitors, and members of the public, must be a primary concern of employees at all times.

Q. If potentially dangerous situations or violent confrontations develop, employees must be aware of and use any available alternatives to the use of force which do not conflict with their duties and responsibilities. Such alternatives include:

1. The use of verbal and non-verbal de-escalation techniques to defuse the situation.

2. Waiting for the prisoner to "cool down" if this can be safely done (e.g. a prisoner who is disruptive but is confined and is not physically harming himself/herself, or threatening to do so, and is not physically harming another person or causing undue disruption to others);

3. Calling additional staff to present a show of force;

4. The use of evasive tactics, followed by retreat and the summoning of assistance.

R. Force shall be used only as set forth in PD 04.05.110 "Use of Force" and this policy. Except when it is necessary to immediately respond with force given the circumstances presented, the supervisor in charge shall advise the prisoner of the intent to use force and the prisoner provided a final opportunity to voluntarily comply with staff direction prior to force being used. Once the supervisor in charge has decided force is to be used, the shift commander or custody supervisor designated by the shift commander shall assume charge of the situation. The shift commander or designated custody supervisor shall ensure that all appropriate security equipment is utilized by that staff (e.g. gas mask, helmet, shield), and convey to the disruptive prisoner that staff are in control of the situation and that continued disruptive behavior is futile.

## FORCED CELL/ROOM ENTRY AND EXTRACTION

S. With approval of the Duty Administrative Officer and in accordance with this policy, staff may forcibly enter a disruptive prisoner's cell or room, which includes the cell or room of a prisoner who is refusing to comply with staff orders to exit the cell or room, to subdue and/or forcibly move the prisoner from the cell or room. Approval of the

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | PAGE |
|---|---|---|---|
| POLICY DIRECTIVE (EXEMPT) | 12/01/2014 | 04.05.112 | 4 OF 9 |

Duty Administrative Officer is not required, however, if there is a life threatening emergency (e.g. suicide attempt; attempt to take a hostage). The Duty Administrative Officer may deploy and activate an Emergency Response Team in accordance with PD 04.05.100 "Disturbance Control" for this purpose. A rush technique may be used only by staff who have been specifically trained in the technique.

T.    A forced cell/room entry generally shall occur only during the institution's regular business hours. A forced cell/room entry may occur during non-business hours, however, if the prisoner's behavior is seriously disruptive to the housing unit to the extent that it may provoke a major disturbance, is seriously destructive to State property, or is dangerous to the prisoner or others.

U.    If the behavior of a prisoner who has been forcibly moved from his/her cell or room requires staff observation, protection, and control beyond that which can be adequately provided in another setting, the prisoner shall be temporarily housed in a controlled cell consistent with requirements set forth in this policy and, if applicable, PD 04.06.115 "Suicidal and Self-Injurious Behavior."

## REQUIREMENTS FOR CHEMICAL AGENTS AND SPECIALTY IMPACT DEVICES

V.    This section does not apply to personal chemical agents issued by the Department except where specifically stated.

W.    Chemical agents, including personal chemical agents, and specialty impact devices may be used to subdue a disruptive prisoner only under the circumstances set forth for non-deadly force in PD 04.05.110 "Use of Force."

X.    Except as set forth in Paragraph Z, a chemical agent and/or a specialty impact device may be used only with prior approval of the Duty Administrative Officer. Chemical agents and specialty impact devices shall not be approved for use in dormitory or bay settings except in response to a major disturbance involving a group of prisoners.

Y.    A QHP shall be contacted prior to staff using a chemical agent and/or a specialty impact device unless the circumstances require an immediate response. The QHP shall review the prisoner's health record to identify any medical or mental health condition that would be affected if chemical agents and/or a specialty impact device are used.

Z.    Chemical agents may be used by transportation officers during the transport of prisoners in accordance with this policy with the approval of the supervising officer. The supervising officer shall report chemical agent use to the Warden or designee of the sending and receiving facilities as soon as possible. The supervising officer also shall report the use to his/her shift commander or designee if not from the sending or receiving facility.

## TRANSPORT CHAIR/RESTRAINT BOARD

AA.    Emergency Restraint Chairs (ERC) for use as transport chairs and restraint boards shall be available throughout the Department and used only by appropriately trained staff. With prior approval of the shift commander, an ERC or restraint board may be used to move a disruptive prisoner within the institution or, for the ERC, to safely transport a disruptive prisoner off-site, including to another institution. If the prisoner is housed at an institution that does not have an ERC, the chair shall be provided by the closest institution with one available.

## MOUTH SHIELD

BB.    With prior approval of the Duty Administrative Officer, a mouth shield ("face mask") may be used on a prisoner who has demonstrated biting or spitting behavior toward staff. A mouth shield shall be used on a prisoner for no more than 30 calendar days per incident. The mouth shield shall be used only during the time a prisoner is involved in out-of-cell movement or an activity managed by staff.

## CUSTODIAL MECHANICAL RESTRAINTS

CC.    Mechanical restraints shall be used only when other effective means of control have failed or are impractical. The least restrictive restraint method deemed necessary to control the prisoner and provide for the safety of the prisoner and others shall be used as determined by the facility. A prisoner controlled by any form of mechanical restraint shall not be housed in a general population cell or room or housed with another prisoner. Authorization for the use of mechanical restraints, the type of restraints authorized, and the application of the restraints shall be

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE (EXEMPT) | 12/01/2014 | 04.05.112 | PAGE 5 OF 9 |

documented in the appropriate logbook. A custody supervisor shall be present to observe restraint application.

DD. Health care staff shall be notified immediately after a disruptive prisoner is placed in any mechanical restraint. A QHP shall see the prisoner as soon as the situation is under control to review the prisoner's physical and mental condition, which shall be documented using the appropriate logbook and in the electronic medical record as required by policy.

EE. Mechanical restraints shall be removed as soon as the prisoner behaves reasonably and sensibly and no longer poses a disruptive threat, as demonstrated in part by a pattern of non-disruptive behavior over a reasonable period of time. Removal shall not be delayed to allow for removal during the same shift as when the restraints were initially applied. Approval to remove restraints shall be obtained from custody staff at the level of shift commander or higher. If a prisoner does not agree to allow the restraints to be removed, appropriate staff shall talk to the prisoner to seek his/her agreement. If the prisoner does not initially agree, his/her agreement shall be sought, at a minimum, whenever the prisoner is provided access to drinking water and toilet facilities pursuant to Paragraph EEE. The prisoner's agreement or refusal to have the restraints removed shall be documented in the appropriate logbook. The restraints shall be removed immediately after the prisoner's agreement to remove the restraints is received, which also shall be documented in the logbook.

FF. Restraint equipment shall not be used as punishment. Restraints shall not be used to lift or carry a prisoner or in any manner which inflicts unnecessary physical discomfort or restricts blood circulation or breathing. A prisoner shall be carried only by transport devices designated for such use in the Ordnance Manual. A restrained prisoner shall not be secured to a stationary object except as specifically authorized by Department policy.

GG. Facility emergency procedures shall specify which staff shall be responsible for evacuation from the housing unit of a prisoner secured in restraints in case of a fire or other emergency.

Soft and Hard Restraints

HH. This section does not apply to the use of four point restraints or restraints used with a safety net. Requirements for four point restraints and a safety net are set forth in Paragraphs RR through VV.

II. Approval from staff at the level of shift commander or higher is required to use leather, plastic, nylon, or other soft restraints or to use metal handcuffs, belly chains, leg irons, or other hard restraints. Hard restraints shall be used only when it is believed that soft restraints will be ineffective. However, soft restraints are not required to be used when a prisoner is being moved by staff. Custody staff must ensure that restraints are appropriately applied and secure.

JJ. Approval of the Duty Administrative Officer is required to secure a prisoner with a soft or hard restraint for longer than two consecutive hours. If the Duty Administrative Officer approves continuing the restraints, s/he shall require status reports on the prisoner's behavior at least once each shift until the restraints are removed. A status report also shall be required whenever there is a change in the prisoner's behavior or condition which requires immediate review. The reports shall include when the prisoner was initially approved to be placed in the restraints, and any specific information regarding the prisoner's behavior that requires continued use of these restraints, and any other information relevant to the prisoner's condition. The Duty Administrative Officer shall review each report received to determine if any additional action needs to be taken and to ensure the prisoner is not restrained any longer than is authorized by policy. Approval must be obtained from the appropriate Assistant Deputy Director to secure the prisoner in restraints for longer than 24 consecutive hours, and at least every 72 hours thereafter if continued use of restraints is required.

KK. Custody staff shall visit each restrained prisoner at staggered intervals not to exceed 15 minutes to visually check the prisoner's general well-being and evaluate the need for continued restraint use. The shift commander shall similarly visit each restrained prisoner at staggered intervals not to exceed four hours. These checks shall include ensuring that restraints are not hampering circulation or breathing or causing unnecessary physical discomfort. Each visit shall be documented in the appropriate logbook and include specifics on the prisoner's well-being and need for continued restraint use. If it is suspected that the prisoner may be showing signs of medical or mental decompensation, including circulatory or respiratory distress, s/he shall be immediately referred for evaluation, and evaluated, as set forth in PD 03.04.100 "Health Services" or PD 04.06.180 "Mental Health Services," as appropriate.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | PAGE |
|---|---|---|---|
| POLICY DIRECTIVE (EXEMPT) | 12/01/2014 | 04.05.112 | 6 OF 9 |

Emergency Restraint Chair (ERC)

LL.   In addition to use as a transport chair pursuant to Paragraph AA, an ERC may be used on a temporary basis to secure a disruptive prisoner. Use of the ERC for this purpose requires prior approval of staff at the level of shift commander or higher. Only correctional staff trained in the use of the ERC are authorized to place a prisoner in the ERC. Except in emergencies, the approving staff member shall ensure that appropriate health care staff are contacted to evaluate whether use of the ERC may affect the prisoner's existing mental or physical condition prior to approving the use of these restraints. The evaluation shall be taken into consideration when determining whether to approve use of the restraints. In addition to routine observation during rounds, a prisoner in an ERC shall be monitored through unrestricted face-to-face visual observation. This may be supplemented by video-camera monitoring, but video-camera monitoring shall not be used instead of unrestricted face-to-face visual observation.

MM.   Approval of the Duty Administrative Officer is required to secure a prisoner in a ERC for more than two consecutive hours. The approval shall be documented in the appropriate logbook. If the Duty Administrative Officer approves continued use of the chair, s/he shall require status reports be recorded regarding the prisoner's behavior at least once each shift until use of the chair is discontinued. A status report also shall be required whenever there is a change in the prisoner's behavior or condition which requires immediate review. The reports shall include when the prisoner was initially approved to be secured in the chair, specific information regarding the prisoner's behavior that requires continued use of the chair, and any other information relevant to the prisoner's condition. The Duty Administrative Officer shall review each report received to determine if any additional action needs to be taken and to ensure the prisoner is not restrained any longer than is authorized by policy. Prior written approval of the CFA Deputy Director or designee must be obtained before a prisoner can be secured in an ERC for longer than 24 continuous hours.

NN.   A prisoner whose behavior does not safely permit removal from the ERC must be fed at regularly scheduled meal times. Prisoners shall not be denied food (including water/liquids) as punishment. All feeding attempts shall be documented by staff including whether the prisoner refuses to eat and whether food is thrown or misused. Facility staff shall determine the most effective method to permit the prisoner to eat without being disruptive. This information, and the estimated amount of food offered and consumed, shall be documented with specificity in the appropriate logbook.

OO.   The prisoner shall be provided access to fresh drinking water to maintain hydration and use of toilet facilities as needed but at least every two hours. Restraints shall be removed as needed to drink water and use toilet facilities. Staff shall document restraint removal and reapplication in the appropriate logbook. Staff shall document with specificity in the appropriate logbook when drinking water and toilet facilities are offered to the prisoner and the prisoner's response. Estimated fluid intake also shall be documented. Whenever staff become aware that a prisoner has not consumed liquids for 24 continuous hours or, during a heat alert as set forth in OP 03.04.100E "Prevention of Heat Related Illnesses in Prisoners," for 12 continuous hours, the Duty Administrative Officer and health care staff shall be immediately notified to ensure evaluations, counseling, and monitoring are provided as set forth in PD 04.06.120 "Hunger Strike." A QHP shall determine whether a prisoner requires more frequent hydration, as a result of his/her medication. Staff shall provide additional access to fresh drinking water as indicated by the QHP.

PP.   A QHP shall visit each prisoner at least once during each health care shift to assess the prisoner's mental and physical condition, including recording the prisoner's vital signs. The assessment shall be documented in the appropriate logbook and in the electronic medical record as required by policy. A QHP shall contact the appropriate Assistant Health Service Administrator regarding any medical or psychiatric concerns involving the prisoner. All staff shall document in the unit logbook information regarding the prisoner's behavior, including statements made by the prisoner and contacts with health care staff.

QQ.   The shift commander shall visit each restrained prisoner at staggered intervals not to exceed four hours. These checks shall include ensuring that restraints are not hampering circulation or breathing or causing unnecessary physical discomfort to the prisoner. Each visit shall be documented in the appropriate logbook and include specifics regarding the prisoner's well-being and need for continued restraint use. If it is suspected that the prisoner may be showing signs of medical or mental decompensation, including but not limited to circulatory or respiratory distress, s/he shall be immediately referred for evaluation, and evaluated, as set forth in PD 03.04.100 "Health Services" or PD 04.06.180 "Mental Health Services," as appropriate. RGC shift commanders are exempt from visiting each medically restrained prisoner in the secured units at Allegiance and McLaren hospitals.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE (EXEMPT) | 12/01/2014 | 04.05.112 | PAGE 7 OF 9 |

<u>Four-Point Restraints/Safety Net</u>

RR.   Four-point restraints (i.e. the securing of <u>both</u> arms and <u>both</u> legs to a specialized bed by soft or hard restraints) and safety nets may be used to secure a disruptive prisoner when neither soft nor hard restraints alone have proven effective in controlling the prisoner's actions, or when there is history of ineffectiveness with the prisoner, <u>and</u> the prisoner's continuing behavior poses a risk to his or her own safety or the safety of others. Hard restraints shall be used with four-point restraints only when it is believed that soft restraints will be ineffective. Subject to Paragraph N, additional restraints and devices intended to prevent self-injury or injury to others may be used in addition to four-point restraints if it has been shown that four-point restraints alone are insufficient to prevent the prisoner from serious personal injury. Custody staff must ensure that restraints are appropriately applied and secure.

SS.   Four-point restraints and safety nets shall be used only at institutions approved by the CFA Deputy Director and only in controlled cells designated by the Warden as set forth in Paragraph WW.

TT.   Prior approval from the Duty Administrative Officer is required to secure a prisoner with four-point restraints or a safety net. The approval shall be documented in the appropriate logbook. Except in emergencies, the Duty Administrative Officer shall ensure that appropriate health care staff is contacted to evaluate whether the restraints may affect the prisoner's existing mental or physical condition prior to approving the use of these restraints. The evaluation shall be taken into consideration by the Duty Administrative Officer when determining whether to approve use of the restraints.

UU.   If the Duty Administrative Officer approves the use of four-point restraints, or a safety net, s/he shall require status reports on the prisoner's behavior within one hour of restraint application and at least once each shift thereafter until the restraints are removed. Status reports also shall be required whenever there is a change in the prisoner's behavior or condition that requires immediate review. The reports shall include when the prisoner was initially approved to be placed in these restraints, specific information regarding the prisoner's behavior that requires continued use of these restraints, and any other information relevant to the prisoner's condition. The Duty Administrative Officer shall review each report received to determine if any additional action needs to be taken and to ensure the prisoner is not restrained any longer than is authorized by policy. The Warden shall ensure that a daily report regarding each prisoner secured with four-point restraints or a safety net is sent to the appropriate Assistant Deputy Director and appropriate Assistant Chief Medical Officer. The report shall identify the date and time the prisoner was initially restrained, the specific conduct that led to the use of the restraint, and the behavior that requires continuing use of the restraint.

VV.   A QHP shall visit each prisoner at least once during each health care shift to assess the prisoner's mental and physical condition, including recording the prisoner's vital signs. The assessment shall be documented in the appropriate logbook and in the electronic medical record as required by policy. A QHP shall contact the appropriate Assistant Health Service Administrator regarding any medical or psychiatric concerns involving the prisoner. All staff shall document in the unit logbook information regarding the prisoner's behavior, including statements made by the prisoner and contacts with health care staff.

<u>CONTROLLED CELLS/OBSERVATION ROOMS</u>

WW.   Wardens shall ensure the availability of an adequate number of controlled cells in their respective institutions to house prisoners who, due to disruptive behavior, require monitoring beyond that which can be adequately provided in the general population or other appropriate setting. This includes identifying cells as observation rooms for prisoners referred for a mental health evaluation or who are continued on observation status pursuant to a management plan developed by a QMHP or QHP. If the institution has a health service area that houses prisoners, observation rooms should be located in that area. However, placement in a different area may be warranted given the unique features of some institutions.

XX.   Controlled cells and observation rooms must allow for easy access and an unobstructed view of the prisoner at all times. Prisoners referred for a mental health evaluation pursuant to PD 04.06.115 "Suicidal and Self-Injurious Behavior" shall be monitored under unrestricted face-to-face visual observation, in addition to routine observation during rounds, until the prisoner is evaluated by a QMHP or QHP and a management plan is implemented. For all other prisoners, video-camera monitoring may be used in lieu of unrestricted face-to-face visual observation provided staff is close enough to immediately respond in case of an emergency.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE (EXEMPT) | 12/01/2014 | 04.05.112 | PAGE 8 OF 9 |

YY.  Controlled cells and observation rooms shall be stripped, except for a mattress and a blanket, before a prisoner is placed in the cell or room except as otherwise authorized for observation rooms pursuant to PD 04.06.115 "Suicidal and Self-Injurious Behavior." Only tear-resistant blankets shall be used in an observation room. Controlled cells and observation rooms shall not contain structures, fixtures, or objects which could reasonably be used to aid in a suicide attempt or other self-injurious, assaultive, or destructive behavior or obstruct the view of the prisoner.

ZZ.  A prisoner in an observation room due to the need for a mental health evaluation pursuant to PD 04.06.115 "Suicidal and Self-Injurious Behavior" shall be issued an approved tear-resistant gown that is of an appropriate size and length to provide for the prisoner's modesty. The prisoner shall not be allowed to possess any state-issued or personal clothing. A prisoner placed in a controlled cell observation room for any other reason shall be allowed to keep one set of "blues" (i.e. state-issued trousers/slacks and shirt/blouse) and shall be allowed to keep personal/state-issued underpants, and for a female prisoner, brassiere. All prisoners shall be issued toilet paper, and for female prisoners, necessary female personal hygiene items. Generally, other personal and state-issued clothing and personal property shall either be secured or stored, except for a ring or wedding band set, prostheses, and dentures. These items also shall be secured or stored if used by the prisoner in the behavior that resulted in his/her placement in the cell or room. Any secured or stored prescribed medications shall be administered to the prisoner by appropriate health care staff. Prisoners shall be allowed certain items as determined medically necessary by health care staff.

AAA.  If a prisoner in a controlled cell or observation room uses or attempts to use a mattress, a blanket, or an item identified in Paragraph ZZ to impede observation by staff or to attempt self-injury, a physical assault, or other destructive activity, staff shall immediately respond and remove the item. If the item was being used to attempt suicide or self-injury and the prisoner is not already in an observation room, s/he shall be immediately moved to an observation room and referred for a mental health evaluation pursuant to PD 04.06.115 "Suicidal and Self-Injurious Behavior." In all cases, as soon as possible after removal of the item, the Duty Administrative Officer shall be immediately contacted by telephone to determine if the item should continue to be withheld for custody and security measures.

BBB.  While in a controlled cell, a prisoner shall not be allowed any out-of-cell/room activity, including visits, except as required to meet the prisoner's necessary personal hygiene needs, for treatment of urgent medical needs, for mental health evaluations or treatment, and as otherwise requested by the QMHP, or other health care staff.

CCC.  Immediately after placement in a controlled cell, a prisoner shall be referred for a medical and mental health evaluation as set forth in PD 03.04.100 "Health Services" and PD 04.06.180 "Mental Health Services," or if the prisoner exhibits self-injurious behavior, PD 04.06.115 "Suicidal and Self-Injurious Behavior." A QHP shall monitor the prisoner and conduct assessments as needed. All staff shall document in the unit logbook pertinent information regarding the prisoner's behavior, including statements made by the prisoner and contacts with health care staff.

DDD.  A prisoner who is in a controlled cell or observation room shall still be fed at regularly scheduled meal times. Prisoners shall not be denied food (including water/liquids) as punishment. All feeding attempts shall be documented by staff including whether the prisoner refuses to eat and whether food is thrown or misused. Facility staff shall determine the most effective method to permit the prisoner to eat without being disruptive. This information, and the estimated amount of food offered and consumed, shall be documented with specificity in the appropriate logbook. The Duty Administrative Officer and health care staff shall be immediately notified whenever staff become aware that a prisoner has not consumed food for 72 continuous hours to ensure medical evaluations, counseling, and monitoring are provided as set forth in PD 04.06.120 "Hunger Strike."

EEE.  The prisoner shall be provided access to fresh drinking water to maintain hydration and access toilet facilities as needed but at least every two hours. A QHP shall determine whether a prisoner requires more frequent hydration, as a result of his/her medication. Staff shall provide additional access to fresh drinking water as indicated by the QHP. A prisoner secured in four point restraint or a safety net shall be removed as needed to drink water and use toilet facilities. Staff shall document restraint removal and reapplication in the appropriate logbook. Staff shall document with specificity in the appropriate logbook when drinking water and toilet facilities are offered to the prisoner and the prisoner's response. Estimated fluid intake also shall be documented. A QHP shall review the logbook entries during daily rounds, or during a heat alert, at least every 12 hours, to determine adequacy of fluid intake. However, whenever staff become aware that a prisoner has not consumed liquids for 24 continuous hours,

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE (EXEMPT) | 12/01/2014 | 04.05.112 | PAGE 9 OF 9 |

or during a heat alert, for 12 continuous hours, the Duty Administrative Officer and health care staff shall be immediately notified to ensure evaluations, counseling, and monitoring are provided as set forth in PD 04.06.120 "Hunger Strike."

FFF.   A QMHP or QHP shall visit each prisoner at least daily to assess the prisoner's mental condition and refer the prisoner for any physical complaints or ailments.  The assessment shall be documented in the appropriate logbook and in the electronic medical record as required by policy.  A QHP shall contact the appropriate Assistant Health Service Administrator regarding any medical or psychiatric concerns involving the prisoner.  All staff shall document in the unit logbook pertinent information regarding the prisoner's behavior, including statements made by the prisoner and contacts with health care staff.

GGG.   Custody staff shall visit each prisoner at staggered intervals not to exceed 15 minutes to visually check the prisoner's general well-being and evaluate the need for continued restraint use.  The shift commander shall also visit each prisoner at staggered intervals not to exceed four hours.  These checks shall include ensuring that restraints are not hampering circulation or breathing or causing unnecessary physical discomfort to the prisoner.  This shall be documented in the appropriate logbook, and include specifics on the prisoner's well-being and need for continued restraint use.  If it is believed that the prisoner may be showing signs of medical or mental decompensation, including but not limited to circulatory or respiratory distress, s/he shall be immediately referred for evaluation, and evaluated, as set forth in PD 03.04.100 "Health Services" or PD 04.06.180 "Mental Health Services," as appropriate.

## RECORDING AND REPORTING USE OF FORCE

HHH.   Whenever possible, in dealing with disruptive prisoners, an audiovisual recording of the incident shall be made consistent with requirements set forth in PD 04.05.110 "Use of Force," including staff efforts to defuse the situation without the use of force.  The Duty Administrative Officer shall view the audio-visual recording within seven business days after the recording was made to ensure all policy requirements were followed.  The recordings shall be retained in accordance with the Department's Record Retention and Disposal Schedule, or if not addressed in the schedule, for a minimum of three years.  However, when it is known that a lawsuit has been filed, or an investigation is currently underway regarding a specific incident, the recording shall be retained until completion of the investigation or litigation, including appeal.  Questions regarding pending litigation shall be directed to the Litigation Section of the Office of Legal Affairs, Budget and Operations Administration.

## SECURITY LEVEL INCREASES

III.   Time and circumstance permitting, security level increases should occur only during the institution's regular business hours.  Each facility will be required to determine the manner and restraint method necessary to move the prisoner to an increased security level.

## PROCEDURES

JJJ.   Wardens, in conjunction with the appropriate Assistant Health Service Administrator and the Administrator of Mental Health Services shall ensure that operating procedures are developed as necessary to implement requirements set forth in this policy directive within 60 calendar days after the effective date of the policy directive.

## AUDIT ELEMENTS

KKK.   A Primary Audit Elements List is available on the Department's Document Access System to assist with self-audit of this policy pursuant to PD 01.05.100 "Self Audit of Policies and Procedures."

APPROVED: DHH   11/14/14

| MICHIGAN DEPARTMENT OF CORRECTIONS **POLICY DIRECTIVE** | EFFECTIVE DATE 01/26/2009 | NUMBER 03.04.125 |
|---|---|---|
| SUBJECT MEDICAL EMERGENCIES | SUPERSEDES 03.04.125 (08/07/00) | |
| | AUTHORITY MCL 333.1032, 333.1033, 750.411, 791.203 | |
| | ACA STANDARDS 4-4203, 4-4351, 4-4389, 4-4390, 2-CO-3B-02, 4-ACRS-2A-07, 4-ACRS-4C-04, 1-ABC-4E-28, 1-ABC-4E-29 | |
| | PAGE 1 OF 3 | |

**POLICY STATEMENT:**

Employees shall provide appropriate and timely response to medical emergencies consistent with the employee's training and the use of standard (i.e., universal) precautions.

**RELATED POLICY:**

04.06.110         Deaths: Natural, Accidental, Suicide, Homicide

**POLICY:**

GENERAL INFORMATION

A.    Central Office, each Correctional Facilities Administration (CFA) facility, and each Field Operations Administration (FOA) facility and field office shall have available first aid kits and cardiopulmonary resuscitation (CPR) emergency kits in standardized locations where they will be readily available to staff. The Administrator of the Bureau of Health Care Services (BHCS) or designee shall identify those items required to be included in the CPR emergency kit; however, the kit shall include at least two resuscitation devices and protective gloves. Each facility head and field office supervisor and, for Central Office, the Manager of the Emergency Services Section in the Operations Division, CFA, shall ensure that staff in their respective areas are notified as to the location of the kits, that the kits are inspected at least quarterly, and that non-serviceable items are replaced immediately.

B.    Uniformed custody staff shall carry the approved resuscitation device and protective gloves while on duty. Staff shall inspect the resuscitation device issued to them at least monthly to ensure that the device is serviceable. Non-serviceable devices shall be reported to supervisory staff and replaced.

C.    Personal protective clothing and equipment shall be available for employee use, inspected, and replaced if unserviceable as specified in the Exposure Control Plan developed pursuant to PD 03.04.120 "Control of Communicable Bloodborne Diseases".

D.    Custody employees in CFA and FOA facilities, and employees in FOA field offices as determined by the FOA Deputy Director, shall be required to attend training in first aid and CPR. Training shall be made available both as a component of new employee training offered pursuant to PD 02.05.100 "New Employee Training Program" and as mandatory training offered pursuant to PD 02.05.101 "In-service Training". BHCS physicians, physician assistants, and nurses also shall be trained in first aid and CPR; dentists, dental hygienists, and dental assistants shall be trained in CPR as part of continuing certification process.

E.    Central Office, each CFA and FOA facility, and other CFA and FOA locations as determined by the CFA or FOA Deputy Director shall have available for use at each worksite at least one automatic electronic defibrillator (AED). On-site supervisors and, for Central Office, Executive Policy Team (EPT) members shall identify staff in their respective areas who shall be trained in the use of an AED. AEDs shall be used only by staff trained in their use. Worksite supervisors and, for Central Office, the Emergency Services Section Manager shall ensure for their respective areas that staff trained in the use of the AED are notified as to its location, that AEDs are inspected at least quarterly, and that non-serviceable AEDs are replaced immediately. On-site supervisors and, for Central Office, the Emergency Services Section

Attach #4

| DOCUMENT TYPE POLICY DIRECTIVE | EFFECTIVE DATE 01/26/2009 | NUMBER 03.04.125 | PAGE 2 OF 3 |
|---|---|---|---|

Manager shall ensure that a list of staff in their respective areas who are trained in the use of an AED is available to all staff at that worksite.

MEDICAL EMERGENCIES IN A CFA OR AN FOA FACILITY

F.    Whenever a person in a CFA or an FOA facility is determined to be in need of emergency medical attention, initial staff response to that emergency shall begin immediately but no later than four minutes after discovery. Staff first upon the scene shall ensure emergency medical assistance is summoned. They also shall initiate emergency first aid as they are qualified to provide as soon as possible, unless the victim is clearly deceased. Emergency first aid shall include the appropriate resuscitation technique if the victim has no pulse or is not breathing. Once initiated, emergency first aid shall continue until relief is provided by an emergency medical response team or until a physician, registered nurse, physician's assistant, or nurse practitioner determines emergency first aid may be discontinued or a physician or registered nurse has pronounced the victim dead.

G.    Staff shall observe standard (i.e., universal) precautions whenever blood or other potentially infectious materials are present.

H.    A seriously ill or injured person, unless clearly deceased, shall be transported to an appropriate medical facility as soon as his/her medical condition permits. Movement of a seriously ill or injured person, including mode of transportation, shall be consistent with accepted principles of first aid. PD 04.06.110 "Deaths: Natural, Accidental, Suicide, Homicide" shall be followed if the person is deceased.

I.    The Michigan State Police or other appropriate law enforcement agency shall be contacted if criminal behavior is suspected or whenever personal injuries appear to have been inflicted with a knife, gun, or other deadly weapon. In such cases, staff shall secure the scene and other appropriate areas, using caution to not disturb physical evidence unnecessarily, until otherwise directed by the Michigan State Police or other appropriate law enforcement agency.

J.    Medical emergencies shall be reported in accordance with PD 01.05.120 "Critical Incident Reporting". Prisoner injuries shall be reported using the Prisoner Accident Report form (CSJ-156). Staff injuries shall be reported using the Employee Accident Report form (CSJ-271). All other injuries shall be reported using the Visitor Accident Report form (CAJ-243).

K.    The facility head shall ensure that an immediate investigation of the circumstances surrounding a medical emergency is conducted. The Internal Affairs Division, OSA, shall be contacted as set forth in PD 01.01.140 "Internal Affairs", if appropriate.

NOTIFICATION IN CASE OF MEDICAL EMERGENCY

L.    Upon initial hire, each employee shall complete an Emergency Notification form (CAJ-184) and enter this information on the MI HR Employee Self Service database. The employee shall be responsible for updating this information on the MI HR Employee Self Service database whenever there is a change. Supervisors shall have access to this information for employees under their direct supervision for notification purposes in case of an emergency.

M.    If an employee dies at work, or requires medical care or treatment at work and is physically unable to personally notify his/her emergency contact person, a supervisor or, in a CFA or an FOA facility, the facility head or designee shall immediately notify the emergency contact in person or by telephone. When deemed appropriate, local law enforcement may be asked to provide this notification. All attempts by the facility head or designee or supervisor to contact the emergency contact person shall be documented in the employee's Personnel file. Deaths and hospitalizations shall be reported to the Michigan Occupational Safety and Health Administration (MIOSHA) as set forth in the Department's Occupational Safety and Health Manual.

Offenders

N.    Each newly committed offender received at a reception facility or at the Special Alternative Incarceration facility (SAI) shall be requested to provide the name and telephone number of a person to be contacted

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>01/26/2009 | NUMBER<br>03.04.125 | PAGE 3 OF 3 |
|---|---|---|---|

in case of an emergency.  Designated staff shall enter this information on the Department's computerized database and document the information on the Basic Information Sheet (CSX-117).  The offender shall be responsible for providing the Department with updated information whenever there is a change; designated staff shall enter the updated information on the Department's computerized database and issue and distribute a revised Basic Information Sheet (CSX-117).

O.    The appropriate facility head or designee shall be notified when an offender in a facility dies or, as determined by the appropriate medical practitioner, is seriously or critically injured or becomes seriously or critically ill.  In such cases, the facility head shall ensure that attempts are made to immediately notify the offender's emergency contact person by telephone or by certified mail.  BHCS staff shall assist in this process upon request.  When deemed appropriate, local law enforcement may be asked to provide this notification.  All attempts by Department staff to notify the offender's emergency contact person shall be documented in the offender's Record Office file or, in FOA, on the Department's computerized database.

RELEASE OF INFORMATION

P.    Whenever an emergency contact person is notified pursuant to Paragraph O, appropriate BHCS staff shall ensure that the emergency contact person is kept informed of the offender's treatment and progress subject to PD 03.04.108 "Prisoner Health Information".

Q.    If an offender in a CFA facility is transported off-site to a medical care facility, the location of the facility shall not be released to the emergency contact person or others unless the offender is critically ill, as determined by the appropriate medical practitioner.  Visiting shall be permitted for a CFA prisoner only as set forth in PD 05.03.140 "Prisoner Visiting".

R.    Medical information on an offender shall be released only as set forth in PD 03.04.108 "Prisoner Health Information".

S.    Information regarding a medical emergency shall be released to news media representatives in accordance with PD 01.06.130 "Media Relations".

PROCEDURES

T.    Wardens, in conjunction with the appropriate Regional Health Administrator, and the FOA Deputy Director shall ensure that operating procedures are developed as necessary to implement requirements set forth in this policy directive.  Operating procedures shall be completed within 60 calendar days after the effective date of this policy directive.  This requirement includes ensuring that their existing operating procedures are revised or rescinded, as appropriate, if inconsistent with policy requirements or no longer needed.  Facility procedures shall not conflict with procedures issued by the Director.

AUDIT ELEMENTS

U.    A Primary Audit Elements List has been developed and is available on the Department's Document Access System to assist with self audit of this policy pursuant to PD 01.05.100 "Self Audit of Policies and Procedures".

APPROVED: PLC   12/18/08