UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASBERRY DANIELS,

                         Plaintiff,

v.

NICKOLAS LESLIE and
HERB BRIGHTON,

                         Defendants.

_____/

Case No. 2:17-cv-10269

District Judge Paul D. Borman

Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT IN PART and DENY IN PART DEFENDANTS LESLIE AND BRIGHTON'S MOTION FOR DISMISSAL AND/OR SUMMARY JUDGMENT (DE 10)

I.    **RECOMMENDATION**:  The Court should **GRANT** Defendants Leslie and Brighton's motion for dismissal and/or summary judgment to the extent it seeks dismissal of Plaintiff's ADA claim.  The Court should **DENY** Defendants' motion to the extent it seeks summary judgment in their favor on Plaintiff's Eighth Amendment excessive force claim.

II.    **REPORT:**

    **A.**    **Plaintiff's Complaint**

    Asberry Daniels is currently incarcerated at the Michigan Department of Corrections (MDOC) Gus Harrison Correctional Facility (ARF).[1]  On January 26,

_____

[1] *See* www.michigan.gov/corrections, "Offender Search."

2017, while incarcerated at ARF, Plaintiff filed the instant civil rights complaint and jury demand against two defendants - Sergeant Leslie and Officer Brighton - in their official and personal capacities.  The facts underlying Plaintiff's complaint stem from the alleged events of September 9, 2016, when Plaintiff "experienced a Grand Mal seizure . . . [.]"  (DE 1 ¶¶ 6-17.)  Plaintiff alleges violations of the Americans with Disabilities Act (ADA) and the Eighth Amendment to the United States Constitution and seeks monetary damages.  (DE 1 ¶¶ 18-30, DE 1 at 6.)

### B.    Pending Dispositive Motion

Judge Borman has referred this case to me for all pretrial proceedings. Currently before the Court is Defendants Leslie and Brighton's April 26, 2017 motion for dismissal and/or summary judgment, which sets forth the following arguments:

I.    Count I must be dismissed because Plaintiff fails to state a legally cognizable claim under either Title II or under 42 U.S.C. § 1983 for an alleged violation[] of the ADA.

II.   Defendants are entitled to qualified immunity with respect to the alleged claim of excessive force under the Eighth Amendment.

(DE 10 at 8-21.)

Plaintiff filed a timely filed a response on May 31, 2017.  (DE 12.)  Any reply was due on or before June 26, 2017.  No reply was filed and the briefing is closed.

**C.     Discussion**

**1.     The facts underlying Plaintiff's complaint concern the alleged events of September 9, 2016.**

In his complaint, Plaintiff claims to suffer from "Grand Mal epilepsy," which he describes as "a condition . . . characterized by loss of consciousness and tonic spasms of the musculature, usually accompanied by repetitive generalized clonic jerking[.]"  (DE 1 ¶ 8.)  According to Plaintiff, he experienced a Grand Mal seizure while inside his cell on September 9, 2016.  (DE 1 ¶ 10.)  A fellow prisoner alerted housing unit staff that Plaintiff "was sprawled out on the floor of his cell in the throes of a seizure[.]"  (*Id*. ¶ 11.)

Defendants Leslie and Brighton were among the officers who responded and were the only officers to enter Plaintiff's cell.  (*Id*. ¶¶ 12-13.)  Shortly thereafter, Health Care Services staff brought a wheelchair and a stretcher.  (*Id*. ¶ 14.)  Under Leslie's direction and supervision, Brighton "placed handcuffs upon Plaintiff while he was still in the throes of the above-described seizure[.]"  (DE 1 ¶ 15.)  Instead of using the wheelchair or the stretcher, which had been provided "as the means of conveyance to Health Care Services," Leslie directed that Plaintiff "be placed in a restraint chair . . . [,]" that MDOC policy reserves "for minatory and extremely violent prisoners[.]"  (*Id*. ¶ 16.)  Brighton clamped the handcuffs upon Plaintiff so tightly that Plaintiff has suffered "deep scarring around the circumference of both . . . wrists," that appear "deeper than the dermis" and have resulted in "the loss of

3

significant motor function in both of Plaintiff's hands," which has rendered him

"unable to, *inter alia*, grasp eating and writing utensils properly[.]" (DE 1 ¶ 17.)

### 2. Defendants are entitled to dismissal of Plaintiff's ADA claim against them (Count I).

#### a. Fed. R. Civ. P. 12

Defendants seek dismissal of Count I under Federal Rule of Civil Procedure

12(b)(6). (DE 10 at 8.) When deciding a motion to dismiss under this rule, the

Court must "construe the complaint in the light most favorable to plaintiff and

accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.

2012). "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see*

*also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a

plausible claim need not contain "detailed factual allegations," but it must contain

more than "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action"). Facial plausibility is established "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The

plausibility of an inference depends on a host of considerations, including common

sense and the strength of competing explanations for the defendant's conduct."

*16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[2]

### b.    Plaintiff's ADA discrimination claim

The Americans with Disabilities Act (ADA) is codified at 42 U.S.C. §§ 12101, *et seq*. Plaintiff claims he is a "qualified individual with a disability," which, under the ADA, means:

> . . . an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of

---

[2] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).  (*See also* DE 1 ¶ 9.)

In Count I of his complaint, Plaintiff claims that Defendants Leslie and Brighton violated Title II of the ADA.  (DE 1 ¶ 25.)  Subchapter II of the ADA, which relates to "Public Services," contains several sections relating to the "Prohibition Against Discrimination and Other Generally Applicable Provisions." *See* 42 U.S.C. §§ 12131-12134.  Although the complaint does not cite a particular section of the ADA, it seems that Plaintiff's ADA claim – which refers to prohibited "discrimination" in the prison context and the guarantee of proper treatment - is based on Section 12132.  (DE 1 ¶ 19.)  This statute provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (emphasis added).

According to Plaintiff, Defendants Leslie and Brighton "discriminated against [him] within the meaning of the ADA by their individual and collusive treatment of him during his medical episode . . . [.]"  (DE 1 ¶ 20.)  In addition to claiming that the medical records from the incident in question do not suggest that

6

he "posed a threat to himself, other prisoners, or staff so as to justify the intensity

and the degree of the restraints foisted upon him by Defendants . . . [,]" (DE 1 ¶

21), Plaintiff claims that Defendants Leslie and Brighton knew or should have

known that:

- . . . MDOC policy, as well as state and federal law, prohibits prisoners from being subjected to personal abuse from staff;

- . . . this incident involved a prisoner who was in the midst of a medical crisis, as opposed to a situation where a prisoner was acting in a menacing or threatening manner;

- . . . handcuffs should never be placed on <u>any</u> prisoner in the manner described [above][.]

(DE 1 ¶¶ 22-24) (emphasis in original).

### c.    Analysis

Defendants Leslie and Brighton argue that Plaintiff's ADA claim against

them must be dismissed for Plaintiff's failure to state a related, legally cognizable

Title II or 42 U.S.C. § 1983 claim.  (DE 10 at 8-14.)[3]  The Court need only address

---

[3] Portions of this argument refer to affidavits that are attached as exhibits to Defendants' dispositive motion.  (DE 10 at 10-12; *see also* DEs 10-2 (Ex. A), 10-3 (Ex. B), 10-5 (Ex. D), 10-6 (Ex. E), 10-7 (Ex. F), 10-8 (Ex. G), 10-9 (Ex. H), 10-10 (Ex. I).)  However, because Defendants specifically move for dismissal of Count I on the basis of Rule 12(b)(6) (*see* DE 10 at 8-12), the Court will exclude the affidavits from its determination of whether Plaintiff's ADA claim states a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not *excluded* by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.") (emphasis added).

the first of these bases, as it should conclude that Plaintiff has failed to allege a *prima facie* case under Title II of the ADA.

Preliminarily, Defendants' "public entity" argument is unavailing.  True, as they claim, "Title II of the ADA does not . . . provide for suit against a public official acting in his *individual capacity*."  *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) (emphasis added).  However, as Plaintiff points out, he is also suing Defendants in their "official" capacities.  (DE 12 at 2.)  As such, his ADA claim "is, for all intents and purposes, against the state of Michigan as the real party-in-interest."  *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010).  *See also Wayne v. Heyns*, No. 13-14495, 2014 WL 3175129, at *9 (E.D. Mich. July 8, 2014) ("The ADA applies to state prisons and, as such, may be asserted against the prison or against a prison employee in his or her official capacity.") (Parker, J., adopting report and recommendation of Majzoub, M.J.).

Nonetheless, Defendants are correct that "the alleged conduct does not constitute a violation of Title II."  (DE 10 at 9-10.)  "[T]o establish a prima facie case of discrimination under the ADA, a plaintiff must prove that:  '(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program . . . because of her disability.'"  *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008) (quoting *Dillery v. City of Sandusky,* 398 F.3d 562, 567

8

(6th Cir.2005) (citing *Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir.2003)).[4]
"Further, the plaintiff must show that the discrimination was *intentionally* directed
toward him or her in particular." *Tucker*, 539 F.3d at 532 (emphasis in original).

For purposes of this motion, the Court assumes the truth of Plaintiff's
assertion that he "is an epileptic and was experiencing a full-blown grand mal
seizure at the time and during the course of the events at issue." (DE 12 at 4.)
However, looking strictly to Plaintiff's ADA claim, Defendants are correct that
Plaintiff "does not allege any program or service from which he was excluded or
denied because of his epileptic condition." (DE 10 at 10-11.) While Plaintiff
attempts to allege that Defendants discriminated against him on the basis of his
epileptic condition by denying him "the right to proper treatment, medical and
otherwise," and that they did so by their "individual and collusive treatment of him
during his medical episode . . . [,]" (DE 1 ¶¶ 19-20), this allegation rings in terms
of an Eighth Amendment excessive force claim. That Plaintiff is challenging the
reasonableness of Defendants' response to a *particular* seizure is evident in the
other paragraphs of this cause of action, where he questions "the intensity and the
degree of the restraints . . . [,]" and makes other allegations about what these
defendants "knew or should have known . . . [.]" (DE 1 at ¶¶ 21-24.) In fact, the

---

[4] *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) ("our
decision in *Lewis v. Humboldt Acquisition Corp.,* 681 F.3d 312, 317 (6th Cir.2012)
(en banc), rejected this sole-causation requirement.

"general allegations" portion of Plaintiff's complaint admits that Health Care
Services brought a wheelchair and a stretcher but then alleges that Defendants did
not use these items. (DE 1 ¶¶ 14, 16.) In so doing, Plaintiff's Eighth Amendment
claim against these Defendants seems limited to the manner in which he was
restrained at a particular moment in time, during a specific medical event, rather
than alleging that Defendants *generally* impeded Plaintiff's ability to obtain
medical treatment or accommodation for his disability in violation of 42 U.S.C.A.
§ 12112(b)(5)(A), or that Defendants excluded him from participation in, denied
him the benefits of, or subjected him to discrimination under a service, program or
activity – *e.g.* treatment by Health Care Services - because of his disability.
*Tucker*, 539 F.3d at 532; 42 U.S.C. § 12132.

### 3. Defendants are not entitled to summary judgment in their favor on Plaintiff's Eighth Amendment excessive force claim (Count II) as argued in their motion.

#### a. Fed. R. Civ. P. 56

Defendants seek dismissal of Count II under Federal Rule of Civil Procedure
56(a). (DE 10 at 14-15.) Under Fed. R. Civ. P. 56, "[t]he court shall grant
summary judgment if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law. Fed. R.
Civ. P. 56(a). A fact is material if it might affect the outcome of the case under
governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The

Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving

party to create a genuine dispute.") (internal quotation marks and citations

omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving

party is merely colorable or is not significantly probative. *City Management Corp.*

*v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words,

summary judgment is appropriate when "a motion for summary judgment is

properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ." *Stansberry*,

651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### b. Plaintiff has alleged an Eighth Amendment excessive force claim.

In Count II of his complaint, Plaintiff contends that Defendants Leslie and

Brighton inflicted cruel and unusual punishment in violation of the Eighth

Amendment to the U.S. Constitution, as they knew or should have known that:

- [T]he Eighth Amendment to the U.S. Constitution expressly prohibits the infliction of cruel and unusual punishment upon prisoners;

- [T]he restraints that they imposed upon Plaintiff were completely without penological justification and that their use of handcuffs in the manner described herein constituted . . . "personal abuse from staff" within the meaning of MDOC Policy Directive ("P.D.") 03.03.130(J);

- [T]heir individual and collusive conduct amounted [to] a "lack of care . . . that [would] injure[] or significantly impair[] the

> health" of Plaintiff within the meaning of P.D.
> 03.03.130(K)(3)[.]

(DE 1 ¶¶ 26-30.)

The Court interprets Plaintiff's foregoing Eighth Amendment claim as one alleging excessive force, as opposed to a conditions of confinement claim. *See, e.g., Barker v. Goodrich*, 649 F.3d 428, 434-435 (6th Cir. 2011).[5] "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

### c. Defendants are not entitled to qualified immunity for the reasons argued in their motion.

Defendants argue that they are entitled to qualified immunity, because "their conduct did not violate clearly established law regarding excessive force." (DE 10 at 15-16.) In so arguing, they rely upon the Supreme Court's oft-cited opinion in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("government officials performing discretionary functions generally are shielded from liability for civil damages

---

[5] The Court does not interpret Plaintiff's passing reference to "lack of care" (DE 1 ¶ 29) as an Eighth Amendment claim of deliberate indifference to a serious medical need, especially given Plaintiff's allegations that Health Care Services arrived "[a] short while later . . . ." (*See* DE 1 ¶¶ 14, 16).

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")

### i.    Is the law "clearly established?"

Defendants argue that "clearly established law" requires that "Defendants be notified that the handcuffs were too tight before an excessive force claim will lie." They further argue that Plaintiff "did not notify Defendants that the handcuffs were too tight while in restraints."  (*See* DE 10 at 16-19.)  Defendants present these arguments by relying upon *Lyons v. City of Xenia*, 417 F.3d 565, 575-576 (6th Cir. 2005) (in the context of Fourth Amendment arrest or seizure) and *Burchett v. Kiefer*, 310 F.3d 937, 939 (6th Cir. 2002) (a case "alleging violations of their Fourth, Sixth, and Fourteenth Amendment rights[,]" where the plaintiff "was seized, handcuffed, and detained in a police car while law enforcement officials executed a search warrant on the home of his brother, who lived next door.").

However, even if Fourth Amendment excessive force cases are analogous in theory to the Eighth Amendment excessive force case at bar, for the purposes of "clearly established law," it is questionable whether *Lyons* and *Burchett* – upon which Defendants rely for the argument that Plaintiff did not notify them that the handcuffs were too tight – constitute "clearly established law" in Plaintiff's case. Here, Plaintiff alleges that Defendants "placed handcuffs upon [him] while he was still in the throes of the above-described seizure[.]"  (DE 1 ¶ 15.)  As Plaintiff

responds, he was "in the midst of a grand mal seizure and was totally incapacitated.  He did not possess the ability to speak or otherwise convey to the officers that the handcuffs were excessively tight."  (DE 12 at 7.)

The Court recognizes that there will be instances in which it will be reasonable to use force in response to an epileptic seizure.  *See Everson v. Leis*, 412 F. App'x 771, 777 (6th Cir. 2011) ("Wittich was justified in using reasonable force to secure the scene.").  However, Defendants' entire qualified immunity argument hinges on the idea that "clearly established law" requires notification that the handcuffs were too tight.  Yet, here, the complaint's allegations do not support the possibility that Plaintiff was in a position to effectively communicate with Defendants.  As such, it seems patently unfair to require Plaintiff to have engaged in such communication to sustain an excessive force claim.  Stated otherwise, if *Lyons* was "clearly established law" even in the situation where Defendants were handcuffing a Plaintiff unable to communicate, it would give such Defendants license to place the handcuffs with more force than necessary under the circumstances.[6]

---

[6] Moreover, given the complaint's recognition of ¶¶ J, K(3) of MDOC PD 03.03.130 ("Humane Treatment And Living Conditions For Prisoners"), and Plaintiff's allegations that Defendants "knew or should have known" that their conduct contravened these directives, (*see* DE 1 ¶¶ 28, 29), it is worth mentioning that "[a] defendant's deviation from normal practice and prison policies can also provide notice that his actions are improper."  *Barker v. Goodrich*, 649 F.3d 428, 436 (6th Cir. 2011).

Perhaps a jury later will decide that Defendants have not engaged in excessive force under *Hudson*. That is not the question here. Today, by Defendants' motion, the Court is only tasked with determining whether they are entitled to qualified immunity as to the Eighth Amendment excessive force claim against them. Because Defendants have not shown that "clearly established law" required Plaintiff to communicate that the handcuffs were too tight, even when Plaintiff's allegations fairly indicate he was unable to do so, the Court should deny Defendants' motion for summary judgment as argued.

### ii.  Has Plaintiff *shown* injury?

Plaintiff alleges that he "suffered deep scarring around the circumference of both of wrists, these scars appearing deeper than the dermis and resulting in the loss of significant motor function in both of Plaintiff's hands, rendering him unable to, inter alia, grasp eating and writing utensils properly[.]"  (DE 1 ¶ 17.)  Thus, there can be little dispute that Plaintiff has *alleged* injury in his complaint.  Instead, although oddly contained within the umbrella of their "qualified immunity" argument (DE 10 at 15-21), Defendants contend that the "[m]edical records contradict Plaintiff's allegation that the handcuffs caused injury."  (DE 10 at 19-21.)  In other words, they dispute *the existence and/or severity* of such injury.  In so doing, they rely upon the affidavits of Deborah A. Ellenwood, R.N.; Mary Velarde, R.N.; Gregory Boyd, R.N.; Kimberly A. Korte, R.N.; and Mary A.

Greiner, D.O.  (*See* DEs 10-6, 10-7, 10-8, 10-9 and 10-10.)  Plaintiff responds by, among other things, pointing to the affidavits of Anthony Chandler and Ardra Young.  (DE 12 at 8-9, 18-19, 23.)

Here, as they did regarding "clearly established law," Defendants rely upon *Lyons*.  (*See* DE 10 at 16, 19.)  In particular, Defendants cite to the following language from that case:  "[n]ot all allegations of tight handcuffing . . . amount to excessive force.  In order to reach a jury on this claim, the plaintiff must <u>allege</u> *some physical injury* from the handcuffing, and <u>must show</u> that officers ignored plaintiff's complaints that the handcuffs were too tight . . . [.]"  *Lyons*, 417 F.3d at 575–76 (citations omitted) (emphases added).  As noted above, they have failed to identify clearly established law applicable under the circumstances alleged within Plaintiff's complaint, and so the utility of the cited case law is questionable.  Further, while I recognize that *Lyons* stemmed from a district court's grant of summary judgment, rather than from a Rule 12 dismissal, *Lyons* noted that a plaintiff need only *allege* some physical injury from the handcuffing and "*show* that officers ignored plaintiff's complaints that the handcuffs were too tight[.]"  *Lyons*, 417 F.3d at 576 (emphasis added).  Given Daniels' allegations that he suffered "deep scarring around the circumference of both…wrists," that appear "deeper than the dermis" (as supported by three declarations, *see infra.*) and have resulted in "the loss of significant motor function in both of Plaintiff's hands,"

which has rendered him "unable to, *inter alia*, grasp eating and writing utensils properly[,]" he has clearly alleged physical injury here.  (DE 1 ¶ 17.)

More to the point, as to *factual support* for his injury, it cannot be said that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To be sure, although Plaintiff's complaint is labeled "verified" and contains a statement of "verification," such statement does not comply with 28 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury").  (*See* DE 1 at 1, 6.)  Instead, Plaintiff's statement is akin to one made in accordance with Fed. R. Civ. P. 11(b) ("Representations to the Court.").  Thus, his complaint may not be treated as an affidavit, and the allegations therein do not, by themselves, create a disputed issue of material fact with regard to his injuries.[7]

However, as Defendants acknowledge, Nurse Boyd's September 16, 2016 examination revealed three "very minor" lacerations or abrasions.  (DE 10 at 20, DE 10-8 [Boyd Affid.] ¶ 7).  More importantly, Plaintiff provides three un-notarized "affidavits," each of which is "substantially [in the proper] form" of a declaration in satisfaction of 28 U.S.C. § 1746 by use of the words "under . . .

---

[7] Where a Plaintiff has filed a properly verified complaint, "his allegations 'have the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment."  *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (quoting *Williams v. Browman,* 981 F.2d 901, 905 (6th Cir.1992)); *see* 28 U.S.C. § 1746 (1988).

penalty of perjury" and "true," and each of which describes Plaintiff's wounds from personal observation.  (*See* DE 12 at 18-23.)  Anthony Chandler's declaration attests to personally observing wounds that "were very deep, with the dermis completely gone around the circumference of both wrists."(DE 12 at 19 ¶ 12.)  Ardra Young's declaration attests that this witness has "some medical training as a former . . . [f]irefighter and E.M.T. / Paramedic," and personally observed Plaintiff's wounds as "not merely superficial, as they appeared deeper than the dermis[.]"  (DE 12 at 23 ¶ 6.)  Plaintiff's own declaration attests that he "suffered numbness and loss of some motor function in [his] wrists as a direct result of being handcuffed as described in [his] complaint[.]"  (DE 12 at 21 ¶ 7.)   In light of these declarations, there is a "genuine dispute" as to the "material fact" of injury. *Carlton v. Turner*, No. 05-1009, 2006 WL 955886, at *2 (6th Cir. Apr. 12, 2006) ("even if the resulting injury was 'minor' . . . , that fact does not preclude him from stating a cognizable Eighth Amendment claim in all settings."); *Kryling v. Sealscott*, No. 98-3470, 1999 WL 644354, *1 (6th Cir. 1999) ("A *de minimis* use of force will not support an actionable claim, . . . but a plaintiff may recover even if he suffers only minor injury.") (citations omitted); *but see Carson v. Harrington*, 12 F. App'x 299, 301 (6th Cir. 2001) (in affirming a district court's grant of summary judgment as to Eighth Amendment excessive force claim, "the medical

records indicate that Carson suffered only minor injuries as a result of the incident.").

### D.    Conclusion

As Plaintiff's ADA claim fails to state a claim upon which relief may be granted, Defendants are entitled to dismissal of this claim against them.  However, Defendants have not shown their entitlement to qualified immunity as to Plaintiff's Eighth Amendment excessive force claim.  Nor have they shown the absence of a "genuine dispute as to any material fact . . .[,]" Fed. R. Civ. P. 56(a), regarding such a claim.  As such, Defendants are not entitled to summary judgment as argued in their motion.  Accordingly, the Court should **GRANT IN PART** and **DENY IN PART** Defendants' dispositive motion.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: November 30, 2017          s/Anthony P. Patti
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on November 30, 2017, electronically and/or by U.S. Mail.

                                  s/Michael Williams
                                  Case Manager for the
                                  Honorable Anthony P. Patti