UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASBERRY DANIELS,

    Plaintiff,

v.

    Case No. 2:17-cv-10269
    Honorable Paul D. Borman
    United States District Judge
    Honorable Anthony P. Patti
    United States Magistrate Judge

NICKOLAS LESLIE and HERB BRIGHTON,

    Defendants.
_____/

## PLAINTIFF'S VERIFIED MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(a)

COMES NOW plaintiff Asberry Daniels ("Plaintiff"), and moves this honorable court to GRANT him judgment as a matter of law pursuant to Fed.R.Civ.P. 56(a).

    I. Plaintiff is entitled to judgment as a matter of law where there is no genuine dispute as to any material fact in the case.

The seminal standard for determining whether summary judgment is appropriate in a given controversy is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" State Farm Fire & Cas. Co. v. McGowan, 421 F.3d 433, 436 (6th Cir. 2005)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). A plaintiff is entitled to summary judgment if s/he demonstrates "that there is no genuine dispute as to any material fact [in the case] and that [s/he] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

The material facts of this case are straightforward. On September 9, 2016, Plaintiff experienced a Grand Mal seizure while he was situated <u>inside his cell</u>. Defendants Leslie and Brighton were among the phalanx of officers who responded to the incident and were the only officers to enter Plaintiff's cell. Defendant Brighton, under the direction and supervision of Defendant Leslie, placed metal handcuffs upon Plaintiff while he was still in the midst of a full-blown seizure episode. The handcuffs were applied so tight that Plaintiff suffered deep scarring around the entire circumference of both wrists. See Magistrate Judge Anthony P. Patti's Report and Recommendation, 4/26/2017, Doc #13, Pg ID 156.

### a. <u>Defendants' Leslie and Brighton's affidavits</u>

Both defendants submitted sworn affidavits in support of their joint motion for dismissal under Rule 12(b)(6) and for summary judgment pursuant to Rule 56(a).

Defendant Leslie swore out in his affidavit that, upon his arrival at Plaintiff's cell, he observed Plaintiff "laying on the floor apparently experiencing some sort of medical emergency." Doc #10-2, Pg ID 154, ¶ 6. He further stated that he "instructed Officer Brighton to place hand restraints on" Plaintiff. Id. at ¶ 7.

Defendant Brighton stated that he "responded to a call...that [Plaintiff] was suspected to be experiencing an epileptic seizure." Doc #10-3, Pg ID 59, ¶ 6. Shortly thereafter, Defendant Leslie arrived and he "instructed [Defendant Brighton] to place [Plaintiff] in hand restraints[.]" Id. at ¶ 8.

The above establishes beyond all peradventure the following material facts: (1) Plaintiff's <u>locality</u> at the time of the incident,

-2-

i.e., that he was inside of his assigned cell; (2) that both defendants knew that Plaintiff was suffering an epileptic seizure; (3) that Plaintiff was lying on his stomach on the floor of his cell, and; (4) that metal handcuffs were applied to him.

> II. There is no genuine dispute that the individual and collusive conduct of the Defendants violated the Cruel and Unusual Punishments Clause of the Eighth Amendment.

With respect to an allegation that prison guards applied excessive force in contravention of the Cruel and Unusual Punishments Clause, "the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

In this case, both defendants admit that handcuffs were applied to Plaintiff, not in an effort to maintain or restore discipline, but rather for purposes of transporting Plaintiff to Health Care, see Doc #10-2, Pg ID 54, ¶ 7; Doc #10-3, Pg ID 59, ¶ 8.

Health Care Services at the Gus Harrison Correctional Facility is not an off-site facility. To the contrary, it is located less than 100 yards from the housing unit where Plaintiff was situated and is connected to the prisoner dining hall. Literally dozens of prisoners on a daily basis present themselves to Health Care Services without being fettered with handcuffs. It is also noteworthy that there is no MDOC policy directive or operating procedure that mandates that a prisoner having a medical crisis or emergency be handcuffed when being transported to Health Care Services.

Although both defendants claimed that Plaintiff became combative and disruptive, Doc #10-2, Pg ID 54, ¶ 8; Doc #10-3, Pg ID 59, ¶ 9, Plaintiff's alleged contumacy did not occur until <u>after</u> the application of the handcuffs. A reasonable correctional officer, having received even basic training as a first responder, would know or should know that an application of metal handcuffs upon a person in the throes of an epileptic episode is medically contraindicated and incompatible to the dignity of mankind as presupposed by the Eighth Amendment.

Defendant Leslie's sworn statement to the effect that he "reasonably believed that [Plaintiff's] actions posed a threat to the safety and security of himself, [his] staff[,] [Plaintiff's] fellow prisoners, and presented a threat of escape" strains every notion of credulity and would otherwise be risible were it not for the gravity of this matter.

There is no genuine dispute with respect to the material fact that Plaintiff was <u>fully inside of his assigned cell</u> and was lying face down throughout the entirety of his epileptic episode. See Doc #10-3, Pg ID 59, ¶ 7. This means that he was completely isolated from all other prisoners and staff and therefore posed no threat to any person, including himself.

Contrary to his claim, Defendant Leslie could not have harbored any reasonable belief that Plaintiff presented a threat of escape. As stated, supra, Plaintiff was inside of his own cell, completely incapacitated by the seizure. Plaintiff's cell door, like every cell door at the Gus Harrison Correctional Facility, is equipped with a "top-locking" mechanism, which locks the cell door by a mere

turn of a key. Any legitimate concern of an escape could have been easily and decisively alleviated by engaging the top-locking mechanism of Plaintiff's cell door.

In addition, Defendant Leslie's claim that Plaintiff posed a risk of escape which justified the unconstitutional use of handcuffs in this matter is completely exploded by what an escape would have necessarily entailed in this case. Assuming arguendo that Plaintiff could have, while still incapacitated by the seizure, harbored the notion and fashioned the intent and design to formulate an escape, he would have necessarily had to accomplish all of the following:

> (1) overcome each of the five officers who presented themselves at his cell; (2) dispatch the three regular housing unit officers on duty; (3) defeat the phalanx of officers assigned to the yard; (4) scale three fifteen-foot tall fences laced with razor wire from top-to-bottom, and; (5) elude the correctional officer who roves about the facility's perimeter in a pick-up truck armed with a sighted rifle and other firearms.

Given Plaintiff's obvious and total incapacitation, no reasonable trier-of-fact could conclude that either defendant harbored a reasonable belief that Plaintiff posed an escape risk.

> III. Defendants' failure to follow MDOC policy is evidence of the unconstitutionality of their conduct toward Plaintiff.

Both defendants acknowledged their "familiar[ity] with the Policy Directive (PD's) referenced" in their respective affidavits. Doc #10-2, Pg ID 53, ¶ 5; Doc #10-3, Pg ID 58, ¶ 5. Both defendants further claimed that their "actions were in accordance with [their] duties" under the policy directives involved, i.e., P.D. 04.05.110 (Use of Force), P.D. 03.04.125 (Medical Emergencies), and

P.D. 04.05.112 (Managing Disruptive Prisoners), Doc #10-2, Pg ID 56, ¶ 15; Doc #10-3, Pg ID 61, ¶ 17.

While prison staff is duly "authorized to use as much force as is reasonably necessary to perform their duties and to protect themselves and others from harm[,] P.D. 04.05.110(D) Doc #10-5, Pg ID 83, "the amount of force which is reasonable [will] depend[] on the totality of circumstances of the particular incident. Id. The controlling factors are:

> 1. The degree of force threatened or used by the individual, including whether s/he possesses a weapon...;
>
> 2. The employee's reasons perception of the danger of death or serious injury;
>
> 3. The alternatives available to control the situation or defuse the conflict without the use of force.

Id. One of the enumerated available alternatives to the use of force is "[w]aiting for the offender to 'cool down,'" provided that this "can be safely done; e.g., a prisoner who is disruptive <u>but is confined</u> and is not physically harming himself...or threatening to do so, and is not physically harming another person or causing undue disruption to others." P.D. 04.05.110(G)(2), Doc #10-5, Pg ID 84; P.D. 04.05.112(Q), Doc #105, Pg ID 90.

Contrary to the claims of both defendants, their actions were not in accordance with established MDOC policy. Assuming arguendo that they reasonable perceived that Plaintiff posed a threat to any person, they failed to invoke the reasonable and available alternative to the use of force by not allowing him to "cool down" within the confined setting of his assigned cell as mandated by P.D. 04.05.110(G)(2) and P.D. 04.05.112(Q)(2).

While an action under 42 U.S.C. § 1983 will not lie based upon mere allegations of prison official's violations of prison policies, a prison official's "deviation from normal practice and prison policies can...provide notice that his actions are improper." Barker v. Goodrich, 649 F.3d 428, 436 (6th Cir. 2011). In the instant case, the very policy directives relied upon by the defendants prove that they had at least one viable alternative to the use of excessive force, but failed to employ it.

This was not an instance where the defendants were responding to a prisoner who was armed with some makeshift weapon and had assaulted another prisoner or staff person. Rather, this was a case where a prisoner was simply experiencing a temporary medical crisis. In his condition, Plaintiff did not pose a threat to any person. As a matter of both law and logic, no force was required to be applied to his person by the defendants.

Reduced to its bare essence, this case is simply about the inhumane and unconstitutional conduct of two prison officials who elected to apply metal handcuffs to a prisoner debilitated by an incurable neurological medical disorder while the prisoner was alone and inside of his cell and was not posing a threat to any person. The defendants' justification for their conduct are post-hoc and contrary to the established policies that they claimed to act in accordance with. The Supreme Court has held that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986). This is precisely the situation in the instant case. No rational trier of fact could find that the conduct of the defendants passed constitutional muster. Plaintiff is entitled to a judgment as a matter of law.

## V. Relief Requested

WHEREFORE, on the basis of the foregoing, plaintiff Asberry Daniels prays that this honorable court, pursuant to Fed.R.Civ.P. 56(a), GRANT him summary judgment with respect to his claims against defendants Nickolas Leslie and Herb Brighton for their violations of the Cruel and Unusual Punishments Clause of the Eighth Amendment as delineated herein and in the complaint and award Plaintiff the monetary amount of $75,001.00 dollars per each defendant, together with costs, interests, and liquidated damages.


Very respectfully submitted,

*[signature: Asberry Daniels]*

Asberry Daniels, #242304
Gus Harrison Correctional Facility
2727 East Beecher Street
Adrian, Michigan 49221-3506

## V. Verification

I, Asberry Daniels, the plaintiff in the above-captioned cause, being of sound mind and majority age, do state and depose upon oath hallowed and penalty of perjury from within the United States, 28 U.S.C. § 1764(1), that the representations as contained in my Motion for Summary Judgment filed pursuant to Fed.R.Civ.P. 56(a) are true and correct and is based upon my personal knowledge of the events and parties at issue, and that I am competent to testify to same before any tribunal, with or without subpoena.

Asberry Daniels, #242304
Gus Harrison Correctional Facility
2727 East Beecher Street
Adrian, Michigan 49221-3506


## Proof of Service

I, Asberry Daniels, the plaintiff in the above-captioned cause, do certify that I forwarded a conformed copy of the instant Motion for Summary Judgment to counsel for the defendants, transmitting same to via first-class mail, postage pre-paid, addressed to the address of record, on even date of filing of same in this court.

Asberry Daniels, #242304
Gus Harrison Correctional Facility
2727 East Beecher Street
Adrian, Michigan 49221-3506

Sherry Daniels, #242304
Gus Harrison Correctional Facility
2727 East Beecher
Adrian, Michigan 49221-3506

United States District Court
231 West Lafayette Boulevard
Detroit, Michigan 48226

RECEIVED
JUL 18 2018
CLERK'S OFFICE
U.S. DISTRICT COURT

7/11/18