UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASBERRY DANIELS,

                Plaintiff,

v.

NICKOLAS LESLIE and
HERB BRIGHTON,

                Defendants.

_____/

Case No. 2:17-cv-10269

District Judge Paul D. Borman

Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S JULY 18, 2018 VERIFIED MOTION FOR SUMMARY JUDGMENT PURUSANT TO FED. R. CIV. P. 56(a) (DE 16)

**I.     RECOMMENDATION**:  The Court should **DENY** Plaintiff's July 18, 2018 verified motion for summary judgment pursuant to Fed. R. Civ. P. 56(a). (DE 16.)

**II.     REPORT:**

### A.     Plaintiff's Complaint

Asberry Daniels is currently incarcerated at the Michigan Department of Corrections (MDOC) Gus Harrison Correctional Facility (ARF).[1]  On January 26, 2017, while incarcerated at ARF, Plaintiff filed the instant civil rights complaint and jury demand against two defendants ─ Sergeant Leslie and Officer Brighton ─

---

[1] *See* www.michigan.gov/corrections, "Offender Search."

in their official and personal capacities.   Plaintiff alleges violations of the Americans with Disabilities Act (ADA) and the Eighth Amendment to the United States Constitution and seeks monetary damages.  (DE 1 ¶¶ 18-30, DE 1 at 6.)

On April 26, 2017, Defendants filed a dispositive motion, which the Court granted as to Count I and denied as to Count II.  (*See* DEs 10, 13, 15; s*ee also Daniels v. Leslie*, No. 17-10269, 2018 WL 3216240 (E.D. Mich. July 2, 2018)).

### B.     Pending Dispositive Motion

Judge Borman has referred this case to me for all pretrial proceedings. Currently before the Court is Plaintiff's July 18, 2018 verified motion for summary judgment pursuant to Fed. R. Civ. P. 56(a), which is largely related to the subjective component of an Eighth Amendment excessive force claim.  (DE 16 at 1-8.)  Plaintiff asks that the Court (a) grant summary judgment as to his claims against Defendants Leslie and Brighton "for their violations of the Cruel and Unusual Punishment[] Clause of the Eighth Amendment . . . [,]" and, (b) "award Plaintiff the monetary amount of $75,001.00 dollars per each defendant, together with costs, interests, and liquidated damages."  (DE 16 at 8.)

### C.     Fed. R. Civ. P. 56

Plaintiff brings his motion pursuant to Fed. R. Civ. P. 56(a).  (DE 16 at 1, 8.) Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ." *Stansberry*,

651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### D.    Discussion

#### 1.    Plaintiff's motion for summary judgment is unopposed.

Plaintiff filed the instant motion for summary judgment on July 18, 2018.

"A respondent opposing a motion must file a response, including a brief and

supporting documents then available." E.D. Mich. LR 7.1(c)(1). "A response to a

dispositive motion must be filed within 21 days after service of the motion." E.D.

Mich. LR 7.1(e)(1)(B). Thus, Defendants' response was due on or about August 8,

2018. To date, neither Defendant has filed a response to Plaintiff's dispositive

motion. Instead, there have only been changes in defense counsel. (DE 17, DE

18). As such, Plaintiff's motion is unopposed.

Nonetheless, "a district court cannot grant summary judgment in favor of a

movant simply because the adverse party has not responded." *Carver v. Bunch*,

946 F.2d 451, 455 (6th Cir. 1991). "The court is required, at a minimum, to

examine the movant's motion for summary judgment to ensure that he has

discharged that burden." *Carver*, 946 F.2d at 455.

#### 2.    The facts underlying Plaintiff's complaint concern the alleged events of September 9, 2016.

In his complaint, Plaintiff claims to suffer from "Grand Mal epilepsy,"

which he describes as "a condition . . . characterized by loss of consciousness and

4

tonic spasms of the musculature, usually accompanied by repetitive generalized clonic jerking[.]" (DE 1 ¶ 8.)  According to Plaintiff, he experienced a Grand Mal seizure while inside his cell on September 9, 2016.  (DE 1 ¶ 10.)  A fellow prisoner alerted housing unit staff that Plaintiff "was sprawled out on the floor of his cell in the throes of a seizure[.]" (*Id*. ¶ 11.)

Defendants Leslie and Brighton were among the officers who responded and were the only officers to enter Plaintiff's cell.  (*Id*. ¶¶ 12-13.)  Shortly thereafter, Health Care Services staff brought a wheelchair and a stretcher.  (*Id*. ¶ 14.)  Under Leslie's direction and supervision, Brighton "placed handcuffs upon Plaintiff while he was still in the throes of the above-described seizure[.]" (DE 1 ¶ 15.)  Instead of using the wheelchair or the stretcher, which had been provided "as the means of conveyance to Health Care Services," Leslie directed that Plaintiff "be placed in a restraint chair . . . [,]" that MDOC policy reserves "for minatory and extremely violent prisoners[.]" (*Id*. ¶ 16.)  Brighton clamped the handcuffs upon Plaintiff so tightly that Plaintiff has suffered "deep scarring around the circumference of both . . . wrists," that appear "deeper than the dermis" and have resulted in "the loss of significant motor function in both of Plaintiff's hands," which has rendered him "unable to, *inter alia*, grasp eating and writing utensils properly[.]" (DE 1 ¶ 17.)

> 3. **Plaintiff is not entitled to summary judgment in his favor on his Eighth Amendment excessive force claim (Count II).**

### a.   Plaintiff has alleged an Eighth Amendment excessive force claim.

In Count II of his complaint, Plaintiff contends that Defendants Leslie and Brighton inflicted cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution, as they knew or should have known that:

- [T]he Eighth Amendment to the U.S. Constitution expressly prohibits the infliction of cruel and unusual punishment upon prisoners;

- [T]he restraints that they imposed upon Plaintiff were completely without penological justification and that their use of handcuffs in the manner described herein constituted . . . "personal abuse from staff" within the meaning of MDOC Policy Directive ("P.D.") 03.03.130(J);

- [T]heir individual and collusive conduct amounted [to] a "lack of care . . . that [would] injure[] or significantly impair[] the health" of Plaintiff within the meaning of P.D. 03.03.130(K)(3)[.]

(DE 1 ¶¶ 26-30.)  The Court interprets Plaintiff's foregoing Eighth Amendment claim as one alleging excessive force, as opposed to a conditions of confinement claim.  *See, e.g., Barker v. Goodrich*, 649 F.3d 428, 434-435 (6th Cir. 2011). Conversely, the Court does not interpret Plaintiff's passing and undeveloped reference to "[a]ny act or lack of care, whether by willful act or neglect, that injures or significantly impairs the health of any prisoner[,]" (DE 1 ¶ 29, MDOC PD 03.03.130 ¶ K(3)) as an Eighth Amendment claim of deliberate indifference to

a *serious medical need*, especially given Plaintiff's allegations that Health Care

Services arrived "[a] short while later . . . ."  (*See Id.* ¶¶ 14, 16).

> **b.   Eighth Amendment excessive force claims involve**
> **objective and subjective components.**

"[T]he Eighth Amendment, which is specifically concerned with the

unnecessary and wanton infliction of pain in penal institutions, serves as the

primary source of substantive protection to convicted prisoners in cases such as

this one, where the deliberate use of force is challenged as excessive and

unjustified."  *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  "There is an objective

component and a subjective component to an Eighth Amendment claim."  *Cordell*

*v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citations omitted).  As the Sixth

Circuit has explained:

> First, "[t]he subjective component focuses on the state of mind of the
> prison officials."  *Williams [v. Curtain]*, 631 F.3d [380,] 383 [(6th Cir.
> 2011)].  We ask "whether force was applied in a good-faith effort to
> maintain or restore discipline, or maliciously and sadistically to cause
> harm."  *Hudson v. McMillian*, 503 U.S. 1, 7. . . (1992).  Second, "[t]he
> objective component requires the pain inflicted to be 'sufficiently
> serious.'"  *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501
> U.S. 294, 298 . . . (1991)).  . . . While the extent of a prisoner's injury
> may help determine the amount of force used by the prison official, it
> is not dispositive of whether an Eighth Amendment violation has
> occurred.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 . . . (2010).  "When
> prison officials maliciously and sadistically use force to cause harm,
> contemporary standards of decency always are violated ... [w]hether
> or not significant injury is evident."  *Hudson*, 503 U.S. at 9 . . . .

*Cordell*, 759 F.3d at 580-581.  *See also Pullen v. Combs*, No. 1:17-CV-255, 2018 WL 3911398, at *7 (S.D. Ohio Aug. 15, 2018), *report and recommendation adopted*, No. 1:17CV255, 2018 WL 4111020 (S.D. Ohio Aug. 29, 2018).  Stated otherwise, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

### c.    Objective component – sufficiently serious pain

As reflected in my November 30, 2017 report and recommendation, which was later adopted by the Court, "[i]n light of [certain] declarations, there is a 'genuine dispute' as to the 'material fact' of injury."  (DE 13 at 19, DE 15 at 12.) Thus, at least part of the objective component is in play.

### d.    Subjective component – state of mind

Perhaps more responsive to Plaintiff's argument, the subjective component – a Defendant's state of mind ─ is also in play.  (DE 16 at 3-5.)  Plaintiff claims that Defendants' April 20, 2017 affidavits, which are attached to their April 26, 2017 motion (DE 10-2, DE 10-3), establish that:  (i) at the time of the incident, he was inside of his assigned cell; (ii) Leslie and Brighton knew he "was suffering an

epileptic seizure;" (iii) he "was lying on his stomach on the floor of his cell[;]" and, (iv) "metal handcuffs were applied to him."  (DE 16 at 2-3.)

However, even if there is agreement between the parties that Plaintiff was "fully inside of his assigned cell," and "lying face down throughout the entirety of his epileptic episode[,]" and "was completely isolated from all other prisoners and staff . . . [,]" the Court should not assume that Plaintiff "posed no threat to any person, including himself."  (DE 16 at 4 (emphasis in original).)  "[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions.  Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).  As the Sixth Circuit has explained:

> "[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." [*Hudson*, 503 U.S.] at 6 . . . .  Because prison officials "must make their decisions in haste, under pressure, and frequently without the luxury of a second chance," we must grant them "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Id.* (internal quotation marks omitted).

*Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002).

While Defendants' previously filed affidavits touch upon Plaintiff's location, the medical emergency, and the use of handcuffs on the date in question, the affidavits also offer *an explanation* for the use of handcuffs during the incident:

- Defendant Leslie attests that he was called to Housing Unit 3, he "found prisoner Daniels laying on the floor apparently experiencing some sort of medical emergency[,]" and he "instructed Officer Brighton to place hand restraints on prisoner Daniels *for purposes of transporting him to Health Care*[.]" (DE 10-2 ¶¶ 6-7 (emphasis added).)

- Likewise, Defendant Brighton attests that he "responded to a call at housing unit 3 notifying [him] that prisoner Daniels was suspected to be experiencing an epileptic seizure." (DE 10-3 ¶ 6.) Defendant Brighton further attests that Defendant Leslie arrived shortly thereafter and instructed him (Brighton) "to place Daniels in hand restraints *to facilitate transportation to Health Services*." (DE 10-3 ¶ 8 (emphasis added).) Moreover, Brighton attests that he "secured the hand restrains in such a way as *to ensure they were not too tight* by inserting [his] finger between the prisoner's wrist and the handcuff and, then, double-locking the cuff with an ink pen tip." (*Id.* (emphasis added).)

Plaintiff challenges the reasonableness of being handcuffed for transportation to health care and notes, *inter alia*, that Defendants each attest that Plaintiff became combative and/or disruptive once or at the time that handcuffs were placed upon him. (DE 16 at 3-4, DE 10-2 ¶¶ 7-8, DE 10-3 ¶¶ 8-9.) Plaintiff also contends that Defendants' justification for their actions is "post-hoc." (DE 16 at 7.)

Thus, even though Defendants did not respond to the instant motion, their previously-filed affidavits — to which Plaintiff himself points in support of his

instant motion ─ compete with Plaintiff's verified motion as to Defendants' states of mind.  Moreover, Plaintiff suggests that he was "in the throes of an epileptic episode" but also contends that he was "completely incapacitated by the seizure." (DE 16 at 4-5.)  Quite simply, there are unanswered questions about what informed Defendants' actions to handcuff Plaintiff on September 9, 2016, and Plaintiff, who claims to have been "completely incapacitated" at the time, is in no position to definitively demonstrate Defendants' subjective state of mind by way of motion. For all this Court knows, the decision to handcuff was informed by security concerns presented by the seizure and the apparent need to transport Plaintiff to ARF Health Care Services, even if "not  an  off-site facility[,]" consistent with Defendants' existing affidavits.[2]  (*See* DE 1 ¶ 16, DE 10-2 ¶ 7, DE 10-3 ¶ 8, DE 16 at 3.)  As one court has put it, "[r]egarding the subjective prong of the analysis, there exists a genuine factual dispute as to whether [Defendant's] actions constituted a good faith effort to maintain security or were simply a malicious act intended to cause harm." *Briggs v. Miles*, No. 1:13-CV-228, 2014 WL 12725042, at *7 (W.D. Mich. Sept. 15, 2014), *report and recommendation adopted*, No. 1:13-

---

[2] A *generalized tonic-clonic seizure*, which is synonymous with a *grand mal seizure*, is "a generalized seizure characterized by the sudden onset of tonic contraction of the muscles often associated with a cry or moan, and frequently resulting in a fall to the ground.  The tonic phase of the seizure gradually give[s] way to clonic convulsive movements occurring bilaterally and synchronously before slowing and eventually stopping, followed by a variable period of unconsciousness and gradual recovery."  Stedman's Medical Dictionary 807400.

CV-228, 2015 WL 1120132 (W.D. Mich. Mar. 12, 2015).[3]  *See also Jones v. Sandusky Cty., Ohio*, 541 F. App'x 653, 666 (6th Cir. 2013) (affirming district court's denial of defendant's motion for summary judgment "because factual questions remain as to his planning, participation, and encouragement of the TRT [Tactical Response Team] members on the night of Jones's death.").[4]

### e.    Failures to follow policies

Finally, Plaintiff contends that Defendants' failure to follow MDOC policy or policies ─ such as MDOC PDs 03.04.125 ("Medical Emergencies"), 04.05.110 ("Use of Force"), and 04.05.112 ("Managing Disruptive Prisoners") – "is evidence of the unconstitutionality of their conduct toward Plaintiff."  (DE 16 at 5-6; *see also* DE 10-5 at 7-23.)  In particular, Plaintiff points to the provisions regarding "alternatives to use of force," and contends that, if Defendants "reasonabl[y] perceived that Plaintiff posed a threat to any person," they "failed to invoke the reasonable and available alternative to the use of force by not allowing him to

---

[3] On Defendants' interlocutory appeal, the Sixth Circuit affirmed "the district court's order denying the defendants qualified immunity on Briggs's Eighth Amendment claims and governmental immunity on his state-law claims for assault and battery."  *Briggs v. Miles*, No. 15-1386, 2017 WL 2174252, at *5 (6th Cir. Mar. 6, 2017).

[4] Much of Plaintiff's argument in this section is based upon Defendant Leslie's concern about the potential for escape.  (*See* DE 16 at 4-5.)  However, the Court notes that Defendant Leslie made his statement with respect to placing Plaintiff in leg irons.  (*See* DE 10-2 ¶ 10.)

'cool down' within the confined setting of his assigned cell . . . ." (DE 16 at 6-7; *see also* MDOC PD 04.05.110 ¶ G and MDOC PD PD 04.05.112 ¶ Q.)

It is true, as Plaintiff points out, that "[a] defendant's deviation from normal practice and prison policies can also provide notice that his actions are improper." *Barker v. Goodrich*, 649 F.3d 428, 436, 430 (6th Cir. 2011) (wherein Plaintiff failed to stand for count and was "pulled from his cell at the London Correctional Institute, handcuffed, and placed in an observation cell where he remained for over twelve hours with his hands restrained behind his back."). However, even if Plaintiff "was simply experiencing a temporary medical crisis[,]" and "did not pose a threat to any person[,]" such that "no force was required to be applied to his person . . . [,]" (DE 16 at 7), "[t]he issue is . . . not whether the use of force was absolutely necessary in hindsight, but 'whether the use of force *could plausibly have been* <u>thought</u> *necessary*, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (quoting *Whitley,* 475 U.S. at 321) (emphases added). Here, it is not clear to the Court whether, as Plaintiff puts it, Defendants' conduct was "inhumane and unconstitutional," (DE 16 at 7), whether Defendants could have reasonably or did actually think the force was necessary under the quickly evolving circumstances which confronted them, or "whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm."
*Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

### E.    Conclusion

"Inasmuch as a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable people might differ — a function traditionally left to the jury — summary judgment often will be an inappropriate means of resolving an issue of this character."  10B Fed. Prac. & Proc. Civ. § 2730 (4th ed.).  This case does not warrant an exception.  It cannot be said that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  Plaintiff not having shown the absence of a "genuine dispute as to any material fact . . .[,]" Fed. R. Civ. P. 56(a), regarding his Eighth Amendment excessive force claim, he is not entitled to summary judgment on Count II as argued in his motion.  Accordingly, the Court should **DENY** Plaintiff's dispositive motion.  (DE 16.)

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d

505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

s/*Anthony P. Patti*
Anthony P. Patti

Dated: October 29, 2018                    UNITED STATES MAGISTRATE JUDGE

## **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on October 29, 2018, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti
