UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASBERRY DANIELS,

                Plaintiff,

v.

NICKOLAS LESLIE and
HERB BRIGHTON,

                Defendants.

_____/

Case No. 2:17-cv-10269

District Judge Paul D. Borman

Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS' JUNE 17, 2019 MOTION FOR SUMMARY JUDGMENT (ECF No. 37)

**I.**    **RECOMMENDATION**:  The Court should **DENY** Defendants' June 17, 2019 motion for summary judgment (ECF No. 37), because, as to the remaining cause of action, they have not shown that "there is no genuine dispute as to any material fact . . . ."  Fed. R. Civ. P. 56(a).

**II.**    **REPORT:**

### A.    **Plaintiff's Complaint**

Asberry Daniels is currently incarcerated at the Michigan Department of Corrections (MDOC) Gus Harrison Correctional Facility (ARF).[1]  On January 26, 2017, while incarcerated at ARF, Plaintiff filed the instant civil rights complaint

_____

[1] *See* www.michigan.gov/corrections, "Offender Search," last visited Dec. 2, 2019.

and jury demand against two defendants ─ Sergeant (Nickolas) Leslie and Officer (Herb) Brighton ─ in their official and personal capacities.  Plaintiff's general allegations concern Defendants' response to Plaintiff's September 9, 2016 seizure. (ECF No. 1 ¶¶ 6-17.)

Plaintiff originally alleged violations of the Americans with Disabilities Act (ADA) and the Eighth Amendment to the United States Constitution, and he seeks monetary damages.  (ECF No. 1 ¶¶ 18-30, ECF No. 1 at 6.)  On April 26, 2017, Defendants filed a dispositive motion, which the Court granted as to Count I and denied as to Count II.  (*See* DEs 10, 13, 15; s*ee also Daniels v. Leslie*, No. 17-10269, 2018 WL 3216240 (E.D. Mich. July 2, 2018)).  Thereafter, Plaintiff filed a motion for summary judgment, which this Court denied on March 29, 2019 by, *inter alia*, adopting the Undersigned's conclusions that "there is a 'genuine dispute' as to the 'material fact' of injury[,]" and that "there are unanswered questions about what informed Defendants' actions to handcuff Plaintiff on September 9, 2016[.]"  (*See* ECF Nos. 16, 19, 23, 34.)

Thus, the Eighth Amendment claims remains active.  Meanwhile, Defendants sought leave to file a second dispositive motion.  (ECF No. 31.)  Over Plaintiff's opposition, the Court granted the request.  (ECF Nos. 33, 35.)

### B.    Pending Dispositive Motion

Judge Borman has referred this case to me for all pretrial proceedings. Currently before the Court is Defendants' June 17, 2019 motion for summary judgment, which argues that Plaintiff:  (1) cannot demonstrate that Defendants "unnecessarily and wantonly inflicted pain upon Plaintiff," and, (2) "has failed to show that Defendants violated clearly established statutory or constitutional rights."  (ECF No. 37, PageID.323, 332, 337.)

Plaintiff filed a timely response.  (ECF No. 38, 39.)  The deadline for filing a reply brief under E.D. Mich. LR 7.1 expired some time ago; therefore, this motion is now ready for decision.[2]

### C.    Fed. R. Civ. P. 56

Defendants bring their motion pursuant to Fed. R. Civ. P. 56.  (ECF No. 37, PageID.320, 331.)  Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts

---

[2] On November 8, 2019, Plaintiff directed the Court's attention to *McGrew v. Duncan*, 937 F.3d 664, 668 (6th Cir. Sept. 4, 2019).  (ECF No. 40.)  The Court has considered this case and referenced it below.

in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### D.   Discussion

### 1.   The facts underlying Plaintiff's "verified" complaint concern the alleged events of September 9, 2016.

Some of the discussion that follows will undoubtedly ring familiar from the Undersigned's previous reports.  Preliminarily, although Plaintiff's complaint is labeled "verified" and contains a statement of "verification," such statement does not comply with 28 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury").  (*See* ECF No. 1, PageID.1, 6.)  Instead, Plaintiff's statement is akin to one made in accordance with Fed. R. Civ. P. 11(b) ("Representations to the Court.").  Thus, his complaint may not be treated as an affidavit, and the allegations therein do not, by themselves, create a disputed issue of material fact with regard to his injuries.[3]

That being said, in his complaint, Plaintiff claims to suffer from "Grand Mal epilepsy," which he describes as "a condition . . . characterized by loss of consciousness and tonic spasms of the musculature, usually accompanied by repetitive generalized clonic jerking[.]"  (ECF No. 1 ¶ 8.)  A *generalized tonic-clonic seizure*, which is synonymous with a *grand mal seizure*, is "a generalized seizure characterized by the sudden onset of tonic contraction of the muscles often associated with a cry or moan, and frequently resulting in a fall to the ground.  The

---

[3] Where a Plaintiff has filed a properly verified complaint, "his allegations 'have the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment."  *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (quoting *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir.1992)); *see* 28 U.S.C. § 1746.

tonic phase of the seizure gradually give[s] way to clonic convulsive movements occurring bilaterally and synchronously before slowing and eventually stopping, followed by a variable period of unconsciousness and gradual recovery." Stedman's Medical Dictionary 807400 (Nov. 2014).  According to Plaintiff, he experienced a Grand Mal seizure while inside his cell on September 9, 2016.  (*Id*. ¶ 10.)  A fellow prisoner alerted housing unit staff that Plaintiff "was sprawled out on the floor of his cell in the throes of a seizure[.]"  (*Id*. ¶ 11.)

Defendants Leslie and Brighton were among the officers who responded and were the only officers to enter Plaintiff's cell.  (*Id*. ¶¶ 12-13.)  Shortly thereafter, Health Care Services staff brought a wheelchair and a stretcher.  (*Id*. ¶ 14.)  Under Leslie's direction and supervision, Brighton "placed handcuffs upon Plaintiff while he was still in the throes of the above-described seizure[.]"  (*Id*. ¶ 15.)  Instead of using the wheelchair or the stretcher, which had been provided "as the means of conveyance to Health Care Services," Leslie directed that Plaintiff "be placed in a restraint chair . . . [,]" that MDOC policy reserves "for minatory and extremely violent prisoners[.]"  (*Id*. ¶ 16.)  Brighton clamped the handcuffs upon Plaintiff so tightly that Plaintiff has suffered "deep scarring around the circumference of both . . . wrists," that appear "deeper than the dermis" and have resulted in "the loss of significant motor function in both of Plaintiff's hands," which has rendered him "unable to, *inter alia*, grasp eating and writing utensils properly[.]"  (*Id*. ¶ 17.)

**2.     Plaintiff has alleged an Eighth Amendment excessive force claim.**

In Count II of his complaint, Plaintiff contends that Defendants Leslie and Brighton inflicted cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution, as they knew or should have known that:

- [T]he Eighth Amendment to the U.S. Constitution expressly prohibits the infliction of cruel and unusual punishment upon prisoners;

- [T]he restraints that they imposed upon Plaintiff were completely without penological justification and that their use of handcuffs in the manner described herein constituted . . . "personal abuse from staff" within the meaning of MDOC Policy Directive ("P.D.") 03.03.130(J);

- [T]heir individual and collusive conduct amounted [to] a "lack of care . . . that [would] injure[] or significantly impair[] the health" of Plaintiff within the meaning of P.D. 03.03.130(K)(3)[.]

(ECF No. 1 ¶¶ 26-30.)  The Court interprets Plaintiff's Eighth Amendment claim as one alleging excessive force, as opposed to a conditions of confinement claim. *See*, *e.g.*, *Barker v. Goodrich*, 649 F.3d 428, 434-435 (6th Cir. 2011).  Conversely, the Court does not interpret Plaintiff's passing and undeveloped reference to "[a]ny act or lack of care, whether by willful act or neglect, that injures or significantly impairs the health of any prisoner[,]" (ECF No. 1 ¶ 29, MDOC PD 03.03.130 ¶ K(3)) as an Eighth Amendment claim of deliberate indifference to a serious

medical need, especially given Plaintiff's allegations that Health Care Services

arrived "[a] short while later . . . ." (*See id.* ¶¶ 14, 16).

>   **3.**   **Defendants are not entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim.**

>   **a.**   **Eighth Amendment excessive force claims involve objective and subjective components.**

"[T]he Eighth Amendment, which is specifically concerned with the

unnecessary and wanton infliction of pain in penal institutions, serves as the

primary source of substantive protection to convicted prisoners in cases such as

this one, where the deliberate use of force is challenged as excessive and

unjustified." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). "There is an objective

component and a subjective component to an Eighth Amendment claim." *Cordell*

*v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citations omitted).

In *Cordell*, Plaintiff "filed suit under 42 U.S.C. § 1983 alleging that Deputy

Sheriff Glen McKinney ran afoul of the Constitution's guarantees under the Eighth

Amendment when he slammed Cordell, who was handcuffed and restrained,

headfirst into a concrete wall." *Cordell*, 759 F.3d at 576. As the Sixth Circuit has

explained:

>   First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams [v. Curtain],* 631 F.3d [380,] 383 [(6th Cir. 2011)]. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7. . . (1992). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently

serious.'"  *Williams,* 631 F.3d at 383 (quoting *Wilson v. Seiter,* 501
U.S. 294, 298 . . . (1991)).  . . . While the extent of a prisoner's injury
may help determine the amount of force used by the prison official, it
is not dispositive of whether an Eighth Amendment violation has
occurred.  *Wilkins v. Gaddy,* 559 U.S. 34, 37 . . . (2010).  "When
prison officials maliciously and sadistically use force to cause harm,
contemporary standards of decency always are violated ... [w]hether
or not significant injury is evident."  *Hudson,* 503 U.S. at 9 . . . .

*Cordell*, 759 F.3d at 580-581.  *See also Pullen v. Combs*, No. 1:17-CV-255, 2018

WL 3911398, at *7 (S.D. Ohio Aug. 15, 2018), *report and recommendation*

*adopted*, No. 1:17CV255, 2018 WL 4111020 (S.D. Ohio Aug. 29, 2018).  Stated

otherwise, "whenever prison officials stand accused of using excessive physical

force in violation of the Cruel and Unusual Punishments Clause, the core judicial

inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort

to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Hudson*, 503 U.S. at 6–7.

### b.    Objective component – sufficiently serious pain

To evaluate the objective component of Plaintiff's excessive force claim, we

ask "whether a reasonable jury could conclude that 'the pain inflicted' by

[Defendants] was 'sufficiently serious' to offend 'contemporary standards of

decency.'"  *Cordell*, 759 F.3d at 585 (quoting *Williams,* 631 F.3d at 383 (internal

quotation marks omitted)).  As noted above, Plaintiff alleges that, instead of the

wheelchair or stretcher, "Defendant Leslie directed that Plaintiff be placed in a

restraint chair that, under MDOC policy, is reserved for minatory and extremely

violent prisoners[,]" and that Brighton clamped the handcuffs upon Plaintiff so tightly that he suffered "deep scarring around the circumference of both . . . wrists," which appear "deeper than the dermis" and have resulted in "the loss of significant motor function in both of Plaintiff's hands," which has rendered him "unable to, *inter alia*, grasp eating and writing utensils properly[.]" (ECF No. 1 ¶¶ 16-17.)

Based on Anthony Chandler's September 24, 2016 declaration, Plaintiff's May 5, 2017 declaration, and Ardra Young's May 9, 2017 declaration (*see* ECF No. 12, PageID.147, 151, 149), my November 30, 2017 report and recommendation, which was later adopted by the Court, concluded that "there [wa]s a 'genuine dispute' as to the 'material fact' of injury." (ECF 13, PageID.172; ECF 15, PageID.192.) Accordingly, at the time of my October 29, 2018 report and recommendation, which also was later adopted by the Court, I noted that "at least part of the objective component [wa]s in play." (ECF No. 19, PageID.216; ECF No. 34, PageID.301-302 (emphasis added).)

Presently, Defendants seem to challenge the objective component, although they do not label it as such. Instead, they argue that "[t]here was no infliction of pain on behalf of Brighton and Leslie[,]" "they caused him no harm[,]" and "Plaintiff is unable to establish that he was harmed . . . ." (ECF No. 37, 328-329, 334-336, 340.) For example, Defendant Leslie attests that he "did not notice any

physical injury on prisoner Daniels' wrists or otherwise as a result of the restraints, nor have I witnessed or learned of any significant injury since." (ECF No. 37-2 at 5 ¶ 14; ECF No. 10-2 ¶ 14.) Defendant Leslie also attested that "[a]t no time did prisoner Daniels complain that any restraints – including the handcuffs – were too tight or ask that they be loosened." (ECF No. 10-2 at ¶ 14, ECF No. 37-2 at ¶ 14.) Records at or near the time of the event(s) in question support Defendants' position. Referring to her notes from the evening of September 9, 2016, Deborah A. Ellenwood, R.N. attests that she . . .

> . . . conducted a full head-to-toe assessment of prisoner Daniels. No pain, tenderness, bleeding or sign of injury was present. He was alert and oriented at the time that I examined him. He did not complain of any injury, pain or decreased motor function in his hands or wrists. If he had made such a complaint, I would have included it in my notes . . . .

(ECF No. 37-4 ¶¶ 8-10; ECF No. 37-8, PageID.375-376.) Also, Mary Velarde, R.N., attests that, on September 9, 2016, she "visited prisoner Daniels in the observation cell where he was housed following a medical incident earlier that day." (ECF No. 37-5 ¶ 5.) Referring to her notes from that visit, Velarde attests that:

> • During the September 9, 2016 examination, I conducted a number of tests to ascertain prisoner Daniels' neurological functioning. This included waking him from his sleep, observing his gait as he walked to the cell door and assessing his balance by instructing him to use his left arm to balance himself. Prisoner Daniels was able to follow my instructions,

11

and he responded to questions appropriately.  He reported no injury or pain, nor did I notice any evidence of this.

- Prisoner Daniels' medical condition appeared normal.  One of the allegations that Prisoner Daniels makes in his Complaint is that he suffered from a loss of motor function in his hands or wrists due to the handcuffs.  During my examination, I tested the motor function in his hands, wrists and upper extremities. Specifically, I asked him to grasp my hands and squeeze them and, then, to flex his upper extremities by pushing against my hands or arms as I resisted him.  Prisoner Daniels displayed no loss of motor function or signs of weakness in his hands, wrists or upper extremities.  Rather, he exhibited bilateral, or relatively equal strength, in both sides of his body.

- Prisoner Daniels denied any injury or pain, and did not report any numbness or tingling.  If he had reported this, it would be included in my notes.

(ECF No. 37-5 ¶¶ 5-8; ECF No. 37-8, PageID.377.)  Furthermore, Kimberly A. Korte, R.N.'s notes from Plaintiff's September 10, 2016 neurologic follow-up indicate that Plaintiff "ambulated without difficulty."  (ECF No. 37-8, PageID.378-380.)[4]

---

[4] Defendants characterize Plaintiff's complaint as concerning placement "in handcuffs and in a restraint chair."  (*See* ECF No. 37, PageID.333.)  Each Defendant also attests about the use of leg irons and the Emergency Restraint Chair (ERC).  (ECF No. 37-2 ¶¶ 10-14, ECF No. 37-3 ¶¶ 11-16; ECF Nos. 10-2, 10-3.) In addition, Nurse Ellenwood attested to use of the ERC.  (ECF No. 37-4 ¶¶ 6, 8.) However, in his response, Plaintiff expressly states that he "has not alleged in his Complaint any constitutional violation with respect to the Defendants' use of the restraint chair."  (ECF No. 39, PageID.423.)  Thus, this report does not address the use of leg irons and the ERC.

However, in the days following the incident in question, Plaintiff continued to seek treatment for his hands and wrists.  On or about September 15, 2016, Plaintiff sought ointment for the "deep scars on both wri[]sts . . . ."  (ECF No. 37-8, PageID.381; *see also* ECF No. 37-6 ¶ 5.)  Gregory Boyd, R.N., referring to his notes from September 16, 2016, attests:

- I examined his wrists and noticed 3 "very minor" lacerations or abrasions.  Two of these were on the right wrist and one on the left.  No infection was present.  I treated the very minor abrasions with topical antibiotic ointment and a Band-Aid, and provided him with additional ointment and Band-Aids in case he needed them in the future.

- Prisoner Daniels did not report any numbness, tingling, or loss of motor functioning in any wrist, nor did I notice any evidence of this during my examination.

(ECF No. 37-6 ¶¶ 6-7, 9; ECF No. 37-8, PageID.382-384.)  Moreover,

- on September 20, 2016, Plaintiff complained of severe hand numbness and loss of finger control/movement, but Kimberly A. Korte, R.N.'s September 21, 2016 notes indicate, among other things, that Plaintiff's hand grasps were equal bilaterally and there was no swelling or redness noted in either hand. (ECF No. 37-8, PageID.385-386.)

- on September 27, 2016, Plaintiff complained of numbness and pain in his hands and wrists, but Julie J. Heath, R.N.'s September 28, 2016 notes indicate, in part, that she "[o]bserved that inmates right hand was of normal coloration, normal [range of motion], warm to the touch.  Inmate could write name, hold a cup of water and tear open med[ication] package without difficulty."  (ECF No. 37-8, PageID.389-392.)

- Rosilyn Jindal, P.A.'s notes from Plaintiff's October 3, 2016 chronic care visit reflect that there was no edema in Plaintiff's extremities and there were no neurological motor or sensory deficits.  (ECF No. 37-8, PageID.394-396.)

- on October 11, 2016, Plaintiff again complained about weakness in both hands, but it seems he was a no show on October 12, 2016.  (ECF No. 37-8, PageID.397, 399-400.)

- thereafter, on October 21, 2016, Plaintiff complained about the copay for his wrist injury.  (ECF No. 37-8 at PageID.401.) That same day, Mary A. Greiner, D.O., noted "full strength to wrist and fingers bilaterally[,]" and also that Plaintiff's "perc[ei]ved bradykinesia in hand and arm movements" was "[n]ot supported" by that day's physical examination.  (ECF No. 37-8 at PageID.402-403; *see also* ECF No. 10-10.)

That Plaintiff continued to seek treatment supports his claim that there is a genuine dispute of material fact as to whether he "suffered an injury as a result of the Defendants' conduct toward him."  (ECF No. 39, PageID.426.)  *See, e.g., Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 403 (6th Cir. 2009) (in a 42 U.S.C. § 1983 excessive force case, "the allegations of bruising and wrist marks create a genuine issue of material fact with regard to the injury prong."), *McGrew v. Duncan*, 937 F.3d 664, 668 (6th Cir. Sept. 4, 2019) (in another Section 1983 excessive force case, "under *Morrison*, bruising *is* enough.").

As the Sixth Circuit summarized in *Cordell*, "[t]o sum up, at this stage in the litigation, we must accept [Plaintiff]'s version of events without weighing the evidence or assessing the credibility of prospective witnesses."  *Cordell*, 759 F.3d

at 587 (reversing district court's grants of summary judgment and qualified immunity).  True, Defendants correctly observe that "Plaintiff's medical records paint a very different picture of Plaintiff's wrists."  (ECF No. 37, PageID.334.)  However, then-fellow ARF prisoner Chandler declares that "the wounds that prisoner Daniels sustained to both of his wrists from the handcuffs that were placed upon him, and these wounds were very deep, with the dermis completely gone around the circumference of both wrists[.]"  (ECF No. 12 at 19 ¶ 12, ECF No. 39 at 9 ¶ 12.)  Fellow prisoner Young declared that the wounds "were not merely superficial, as they appeared deeper than the dermis[.]"  (ECF No. 12 at 23 ¶ 6.)  Plaintiff declared that he "suffered numbness and loss of some motor function in [his] wrists . . . ."  (ECF No. 12 at 21 ¶ 7.)  Here, the Court should resist the temptation to overshadow these "lay" descriptions of Plaintiff's injury – one of which is issued by a self-described "former Detroit Firefighter and E.M.T. / Paramedic" – with the affidavits of three Registered Nurses (Ellenwood, Velarde and Boyd) and notes contemporaneous with their examinations.  (ECF Nos. 37-4, 37-5, 37-6; ECF No. 37-8, PageID.375-377, 382-384.)  Whatever doubt there may be that Plaintiff suffered sufficiently serious pain, if the Court accepts Chandler's, Young's, and Plaintiff's declarations as true, "a reasonable jury could conclude that [Plaintiff] suffered severe pain that objectively violated our contemporary norms of human dignity."  *Cordell*, 759 F.3d at 587.

### c.   Subjective component – state of mind

#### i.   Allegations regarding the use of handcuffs

Plaintiff alleges that Defendants knew or should have known that "the restraints that they imposed upon Plaintiff were completely without penological justification . . . [,]" "their use of handcuffs in the manner described herein constituted . . . 'personal abuse from staff' within the meaning of MDOC Policy Directive ("P.D.") 03.03.130(J)[,]" and "their individual and collusive conduct" amounted to a "lack of care . . . that injures or significantly impairs the health of any prisoner[,]" MDOC PD 03.03.130 ¶ K(3).  (ECF No. 1 ¶¶ 28-29.)

#### ii.   Defendants' initial dispositive motion and their April 20, 2017 Affidavits

In conjunction with their first dispositive motion, Defendants provided the Court with affidavits dated April 20, 2017.  (ECF Nos. 10-2, 10-3.)  While Plaintiff's Eighth Amendment claim is based upon Defendants' alleged non-compliance with MDOC PD 03.03.130 (ECF No. 1 ¶¶ 28-29), Defendants Leslie and Brighton each attest that they acted in accordance with MDOC Policy Directives 03.03.130 ("Humane Treatment and Living Conditions for Prisoners"), 04.05.110 ("Use of Force"), 03.04.125 ("Medical Emergencies"), and 04.05.112

("Managing Disruptive Prisoners").[5]  (ECF No. 10-2 ¶ 15, ECF No. 10-3 ¶ 17.)  In

fact, as to "protection from mental or physical abuse," the MDOC policy directives

provide:  "Staff have a responsibility to protect the lives of both employees and

prisoners, provide for the security of the State's property, prevent escape, and

maintain good order and discipline. Thus, they are sometimes required to act under

circumstances where the use of physical restraint or force is required."  MDOC PD

03.03.130 ¶ K.  (*See also* MDOC PD 04.05.110 ¶¶ A, T(4).)

Later, when I considered Plaintiff's July 18, 2018 dispositive motion (ECF

No. 16), I observed that, while Defendants' affidavits touch upon Plaintiff's

location, the medical emergency, and the use of handcuffs on the date in question,

the affidavits also offer *an explanation* for the use of handcuffs during the incident:

- Defendant Leslie attests that he was called to Housing Unit 3, he "found prisoner Daniels laying on the floor apparently experiencing some sort of medical emergency[,]" and he "instructed Officer Brighton to place hand restraints on prisoner Daniels *for purposes of transporting him to Health Care*[.]" (ECF No. 10-2 ¶¶ 6-7 (emphasis added).)

- Likewise, Defendant Brighton attests that he "responded to a call at housing unit 3 notifying [him] that prisoner Daniels was suspected to be experiencing an epileptic seizure."  (ECF No. 10-3 ¶ 6.)  Defendant Brighton further attests that Defendant Leslie arrived shortly thereafter and instructed him (Brighton) "to place Daniels in hand restraints *to facilitate transportation to Health Services*."  (ECF No. 10-3 ¶ 8 (emphasis added).)

---

[5] Copies of these policy directives, including two which are "exempt," *i.e.*, not publicly available, are attached to Defendants' initial dispositive motion.  (*See* ECF No. 10-5, 4-23.)

> Moreover, Brighton attests that he "secured the hand restrains in such a way as *to ensure they were not too tight* by inserting [his] finger between the prisoner's wrist and the handcuff and, then, double-locking the cuff with an ink pen tip." (*Id.* (emphasis added).)

(ECF No. 19, PageID.218; *see also* ECF No. 39, PageID.425.)  I also acknowledged Defendants' attestations that Plaintiff became combative and/or disruptive *once the handcuffs were placed upon him.* (*Id.*; ECF No. 10-2 ¶¶ 7-8, ECF No. 10-3 ¶¶ 8-9.)[6]

Accordingly, on October 29, 2018, I opined that Defendants' affidavits competed with Plaintiff's verified motion (ECF No. 16) as to Defendants' states of mind.  (ECF No. 19, PageID.218-219.)  Further, I summarized:  "[q]uite simply, there are unanswered questions about what informed Defendants' actions to handcuff Plaintiff on September 9, 2016[.]"  (ECF No. 19, PageID.219.)

### iii. Defendants' latest dispositive motion relies upon, *inter alia*, Plaintiff's 2018 deposition and Chandler's 2019 deposition

Now, in Defendants' June 17, 2019 dispositive motion, Leslie and Brighton challenge the subjective component, arguing that Plaintiff "is unable to establish that Leslie or Brighton unnecessarily and wantonly inflicted pain on him."  (ECF

---

[6] Similarly, Nurse Ellenwood's September 9, 2016 notes describe that she was "[c]alled to unit for report of seizure.  [Defendant] Leslie had inmate in restraints on his face on the floor commanding him to stop resisting, stating he was combative, and he was sure he OD'd again."  (ECF No. 37-8, PageID.375.)

No. 37, PageID.334.)  In support of this argument, they rely upon the following

exchange from Plaintiff's December 14, 2018 deposition testimony:

> Q.      [S]o could you tell me about what you remember about, you
> know, Brighton and Leslie specifically because they are the ones
> you've put into this complaint, what do you have a memory of their
> interaction with you?
>
> A.      When I'm in a seizure I can't -- you can't remember nothing at
> that time.

(ECF No. 31, PageID.276; ECF No. 31-1, PageID.281-282.)  Later in the

deposition, Plaintiff was asked, "[s]o basically your complaint is what Mr.

Chandler told you?"  (ECF 37-9, PageID.411.)  The transcript does not provide a

verbal response, but rather (for whatever evidentiary value it has), indicates that

Plaintiff "[n]odd[ed] [his] head up and down."  (*Id*.)  (*See also* ECF No. 37-9,

PageID.414-415.)

   If Plaintiff cannot remember the events in question, then the Court must look

to other evidence of Defendants' state(s) of mind.  By way of background, in

Chandler's September 24, 2016 declaration, which Plaintiff provided to this Court

in response to Defendants' initial dispositive motion, Chandler contends that he

"personally observed" or "personally witnessed," *inter alia*:

- Plaintiff "lying on the floor of his assigned cell in the throes of
  a Grand Mal seizure[,]"

- Several officers "present themselves to Daniels' assigned cell
  during this crisis," and,

- ARF custody staff "conducted themselves in a highly militaristic and aggressive manner toward prisoner Daniels, treating him as if he was the most disruptive of prisoners as opposed to a medical patient[.]"

(ECF No. 12, 18-19 ¶¶ 3, 6, 11; ECF No. 39, PageID.428-429.)

More recently, at his January 23, 2019 deposition, Chandler testified that he could "hear directly everything that was going on." (ECF No. 31, PageID.276, ECF No. 37-10, PageID.419.) He further expounded:

> I can hear his body hitting -- I don't know if it was bed, desk. I can hear Brighton and Leslie telling Mr. Daniels, "Mr. Daniels, stop thrashing. Stop moving around. I need you to be still," and I'm study - - telling my -- and I'm -- literally, I'm speaking out loud. I'm like, "The man is having a seizure."

(*Id*.) In addition, Chandler explained:

> I can hear the conversations with the officers. That's when I heard Sergeant Leslie tell Brighton -- Officer Brighton, "Put the handcuffs on him." I guess because of the thrashing he was doing, I don't know if they thought he was a threat to them or to hi[m]self. I still waited almost -- it was two minutes and some seconds before -- I don't know, maybe longer than that. I -- time had -- it just dissipated. It took a while before Healthcare showed up.

(ECF No. 37-10, PageID.418.)

It is also interesting to note that, in their affidavits, Defendants Leslie and Brighton rely upon, *inter alia*, MDOC Policy Directive 04.05.112 ("Managing *Disruptive* Prisoners") (emphasis added) in support of their actions. (ECF No. 37-2 ¶ 15, ECF 37-3 ¶ 17.) Sergeant Leslie refers to Plaintiff as "apparently experiencing some sort of medical emergency[,]" yet he instructed Defendant

20

Brighton to handcuff Plaintiff "for purposes of transporting him to Health Care," *after which* Plaintiff became "combative" and "disruptive." (ECF No. 37-2, PageID.346 ¶¶ 6-8.) Officer Brighton states that Plaintiff "began acting combatively" *after* hand restraints had already been placed on him. (ECF No. 37-3, PageID.352 ¶¶ 8-9.) Nurse Ellenwood was summoned to Plaintiff's cell, as he was "reportedly *experiencing an epileptic seizure* or other medical emergency[;]" yet, Ellenwood heard Defendant Leslie "order[] him to stay calm and *stop resisting*." (ECF No. 37-4, PageID.357 ¶¶ 4-5 (emphasis added).) Considering these affidavits along with the testimony given by Plaintiff and his fellow prisoners, a jury could well conclude that Daniels was being inappropriately − or perhaps cruelly − treated like a hostile, disruptive prisoner, rather than as the convulsive, emergent patient that he then presented to be. Or perhaps not. I recommend that it is for the fact-finder to sort this out.

### iv.   **Weight of the evidence**

While Defendants' motion relies upon many pieces of evidence, the Court focuses here on Plaintiff's and Chandler's deposition testimony, as these post-date Defendants' initial dispositive motion (ECF No. 10) and were mentioned within their February 26, 2019 motion for leave to file a second dispositive motion (ECF No. 31). To this end, Defendants make much of Plaintiff's testimony that he does not remember the events in question, and they challenge Chandler's knowledge of

the matters regarding which he testified.  (ECF No. 37, PageID.334-337.)  For example, Defendants contend that "[l]ogistically, Chandler could not have knowledge of what was going on inside of Plaintiff's cell due to him being confined in his cell," and that "[t]he accounts of Anthony Chandler are not credible because he must make assumptions . . . ."  (ECF No. 37, PageID.336-337, 339.)

However, although Chandler did not "know if they thought [Plaintiff] was a threat to them or to hi[m]self[,]" as noted above and as referenced by Plaintiff, Chandler testified about being able to *hear* the events in question.  (ECF No. 39, PageID.424; ECF No. 37-10, PageID.418-419).  Therefore, even if, *arguendo*, Plaintiff could not have *seen* what was taking place, he would still be able to testify about what he *heard*.  The Court does not determine credibility or weigh the evidence on a motion for summary judgment.  *Anderson*, 477 U.S. at 249 ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").  Defendants will remain free to cross-examine Chandler, and the jurors will remain free to credit or discredit Chandler's testimony, as they see fit.[7]

---

[7] For example, a reasonable jury could find Chandler's testimony that Plaintiff was thrashing *consistent with* Plaintiff experiencing an epileptic seizure.  (ECF No. 37-10 at PageID.418-419.)  Moreover, it seems that only six pages of Chandler's testimony have been made part of the record.  (ECF No. 31-1 at PageID.281-284 [pp. 7, 8, 11, 12], ECF No. 37-10 at PageID.418-419 [pp. 12, 14.])  Perhaps other

### v.      The use of handcuffs

The use of handcuffs to transport Plaintiff to health care may well have been consistent with an effort to *maintain* discipline.  *See Hudson*, 503 U.S. at 7.  *See also* MDOC PD 04.05.112 ("Managing Disruptive Prisoners") ¶¶ HH-KK ("Soft and Hard Restraints") ¶¶ LL-QQ ("Emergency Restraint Chair (ERC)").  (ECF No. 10-5, PageID.92-93.)  On the other hand, the use of handcuffs may have been improperly malicious or sadistic.  *See*, *e.g.*, *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 572–73 (6th Cir. 2013) ("In its *Standard Minimum Rules for the Treatment of Prisoners,* the United Nations stated that restraints including handcuffs and leg irons should only be used '[a]s a precaution against escape,' '[o]n medical grounds by direction of the medical officer,' or 'if other methods of control fail, in order to prevent a prisoner from injuring himself or others or from damaging property.'") (quoting E.S.C. Res. 663 C (XXIV) (July 31, 1957), 2076 (LXII) (May 13, *573 1977), at Rule 33, *available at* http://www2.ohchr.org/english/law/treatmentprisoners. htm.).  Neither

---

portions of the transcript support Plaintiff's contentions that there are genuine disputes of material fact regarding "[w]hether Plaintiff was combative or simply experiencing the well-known clonic, uncontrollable and involuntary jerking movements that are a signature feature of epileptic seizures[,]" "[w]hether Anthony Chandler was in a position to witness and accurately attest to the Defendants' action as reflected in his affidavit [or deposition testimony] and in the Complaint in general," or "[w]hether the Defendants' use of handcuffs was reasonable under the circumstances[.]"  (ECF No. 39 at PageID.426.)

Plaintiff's testimony that he has no personal recollection of the events in question nor Chandler's testimony as to what he heard resolve this issue.  In the end, the reasoning in my prior report also applies here:  "[i]nasmuch as a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable people might differ — a function traditionally left to the jury — summary judgment often will be an inappropriate means of resolving an issue of this character."  10B Fed. Prac. & Proc. Civ. § 2730 (4th ed.).  Having considered the newly submitted and more recent deposition testimony from Plaintiff and Chandler, a reasonable jury could conclude either that Defendants applied physical force, in this case handcuffs, "in a good-faith effort to maintain or restore discipline," or "maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6–7.  As our sister court put it, "there exists a genuine factual dispute as to whether [Defendant's] actions constituted a good faith effort to maintain security or were simply a malicious act intended to cause harm."  *Briggs v. Miles*, No. 1:13-CV-228, 2014 WL 12725042, at *7 (W.D. Mich. Sept. 15, 2014), *report and recommendation adopted*, No. 1:13-CV-228, 2015 WL 1120132 (W.D. Mich. Mar. 12, 2015), *aff'd*, No. 15-1386, 2017 WL 2174252 (6th Cir. Mar. 6, 2017).  *See also Jones v. Sandusky Cty., Ohio*, 541 F. App'x 653, 666 (6th Cir. 2013) (affirming district court's denial of defendant's motion for summary judgment where factual disputes remained as to the subjective prong).

### 4.    Qualified immunity

In their first dispositive motion, Defendants argued that they were "are

entitled to qualified immunity because their conduct did not violate clearly

established law regarding excessive force."  (ECF No. 10, PageID.42-48.)  In my

related November 30, 2017 report, I concluded that "Defendants [we]re not entitled

to qualified immunity for the reasons argued in their motion."  (ECF No. 13,

PageID.166.)

Defendants now argue that they are entitled to qualified immunity, because

"a rational trier of fact would not conclude in this case that [they] committed a

clearly established constitutional violation against the Plaintiff."  (ECF No. 37,

PageID.337-339.)  However, the sum and substance of their argument simply

states:

> Plaintiff is unable to show Brighton or Leslie exerted any force on
> him beyond the act of handcuffing itself and placing him in a restraint
> chair. The accounts of Anthony Chandler are *not credible* because he
> must make assumptions in order to convey to Plaintiff what occurred
> and why it occurred since Plaintiff admits he has no memory of the
> events.

(ECF No. 37, PageID.339 (emphasis added).)  While it is well-established that

"government officials performing discretionary functions generally are shielded

from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known[,]" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), Defendants'

"qualified immunity" argument essentially attacks the weight of Plaintiff's evidence.

### E. Conclusion

Defendants are not entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim (Count II), because they have not shown the absence of a "genuine dispute" as to the "material fact[s]" of sufficiently serious pain and state of mind, *i.e.*, the objective and subjective components. Fed. R. Civ. P. 56(a); *Cordell*, 759 F.3d at 580-581. Therefore, it cannot be said that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Moreover, Defendants' qualified immunity argument is not an authentic, defensive argument; rather, it just attacks the weight of the evidence. Accordingly, the Court should **DENY** Defendants' motion for summary judgment. (ECF No. 37.) If the Court agrees with this recommendation, the matter should proceed to trial.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d

505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

s/*Anthony P. Patti*
Anthony P. Patti
Dated: December 17, 2019            UNITED STATES MAGISTRATE JUDGE

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing document was sent to parties of record on December 17, 2019, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti